John Brodek, Assignee of Dearborn Glass Company, Appellant, v. Indemnity Insurance Company of North America, Appellee.

Gen. No. 39,130.

Opinion filed November 16, 1937.

McKenna, Harris & Schneider, of Chicago, for appellant; Abraham W. Brussell, of Chicago, of counsel.

Wendell H. Shanner, of Chicago, for appellee; Charles V. Laughlin, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

John Brodek, assignee of Dearborn Glass Company, a corporation, brought suit in the municipal court to recover damages for breach of an indemnity insurance policy issued by defendant and also for violation of a written supplemental agreement entered into between defendant and Dearborn Glass Company, plaintiff's assignor, subsequent to the issuance of the policy. The cause was submitted to the court on an agreed statement of facts. A written motion for a finding, submitted by defendant, was allowed by the court, and judgment was accordingly entered in favor of defendant and against plaintiff for costs. On appeal by plaintiff the parties have certified their controversy upon agreed facts under our Rule 23 and submitted to us for decision the issues of law involved.

The agreed facts disclose that December 6, 1931, Indemnity Insurance Company of North America (hereinafter referred to as defendant) issued to Dearborn Glass Company a certain policy commonly known as a Standard Workmen's Compensation and Employer's Liability Policy. June 17, 1932, plaintiff, who had for some time prior thereto been an employee of the glass company at its factory in Chicago, filed suit against his employer in the superior court to recover damages for personal injuries sustained by him while engaged as an employee of the glass company. Plaintiff's declaration alleged, in substance, that the employer carried on a business which involved a process of shellacking and polishing mirrors by the use of various chemicals, including mercury and ammonia compounds and other chemicals, the composition of which were unknown to plaintiff but were known to Dearborn Glass Company, his employer; that after the application of these chemicals to the mirrors the

latter were rubbed, with the result that noxious and poisonous fumes and gases, dangerous to the health of the employee were permitted to escape; that plaintiff was engaged over a period of several years in polishing and beveling glass and in the process of shellacking, buffing and polishing mirrors by means of these chemicals, and by reason of his exposure to the action of the poisonous, noxious and deleterious fumes and gases emitted from these mirrors, and the inhalation thereof by plaintiff, he was exposed to dangers not ordinarily incidental to other lines of employment in the glass company's factory, and as a result thereof he incurred a disease and illness peculiar to his employment, for which damages were sought. No claim for compensation was ever made with the industrial commission and when suit was instituted by Brodek, more than 18 months had elapsed since his employment had terminated and the statutory period for filing a claim with the commission had expired.

Defendant was immediately notified by Dearborn Glass Company of plaintiff's claim, and when on June 24, 1932, summons was served on the glass company, a copy of the summons was immediately forwarded to defendant. Thereafter, various conferences ensued between representatives of the glass company, and defendant, in which the question was raised as to whether or not the indemnity company should be obliged to defend the suit under the terms of the policy. Defendant took the position that the opinion in *Belleville Enameling & Stamping Co. v. United States Casualty Co.*, filed June 9, 1932, in the fourth district of Illinois and reported in 266 Ill. App. 586, was controlling. However, there was then pending in the Supreme Court of Illinois a petition for certiorari in that cause and until the final disposition thereof the indemnity company desired to preserve the *status quo* of its undertaking with the Dearborn Glass Company, and

accordingly, after considerable discussion, a supplemental agreement was executed July 29, 1932, between the glass company and the Indemnity Insurance Company of North America, which recited, in substance, the pendency of Brodek's suit in the superior court, the contention of Dearborn Glass Company that the damages claimed in the suit instituted by Brodek were covered by defendant's policy, the counter-contention of the Indemnity Insurance Company that Brodek's claim was not covered by the policy in question, and that ''for the purpose of saving any and all the rights of the Indemnity Insurance Company of North America and the Dearborn Glass Company in relation to their respective claims,'' it was agreed between the parties that the indemnity company should enter the appearance of Dearborn Glass Company and file appropriate pleadings on or before August 1, 1932, ''for the purpose of avoiding any default that could or might be taken against the Dearborn Glass Company, in the cause aforesaid. That the Indemnity Insurance Company of North America undertakes and agrees to defend said suit for damages on account of alleged illness or disability claimed to have occurred on or prior to the 1st day of January, 1931, as alleged in the Declaration filed in said cause.'' It was further stipulated that any action taken by the indemnity company in connection with the investigation, settlement or defense of said suit should not be held to be an admission that the insurance policy issued to the glass company prior thereto covered said illness, disability or suit for damages then pending, and that nothing contained in the agreement should be construed as an admission or waiver on the part of either of the parties to any of their respective rights against each other under the policy of insurance or any policies issued by the indemnity company to the Dearborn Glass Company.

Thereafter, July 30, 1932, the indemnity company filed the appearance of the Dearborn Glass Company in the superior court proceeding, and also a plea of the general issue. Subsequently, Brodek's attorneys noticed the cause for trial and it was placed on the calendar of one of the judges of the superior court. Between June and November, 1932, there were various telephone conversations and conferences between counsel representing the indemnity company and the glass company relating to ways and means of successfully defending or advantageously settling the superior court action then pending.

November 22, 1932, there appeared in the Chicago Law Bulletin, under the printed orders of the Supreme Court of Illinois, a notation that the court had denied the petition for certiorari in the case of *Belleville Enameling & Stamping Co. v. United States Casualty Company, supra*. Shortly thereafter the indemnity company's representative advised its attorneys that in view of the action of the Supreme Court they should no longer defend the pending suit, and that since the indemnity company was handling the defense under the stipulation of July 29, 1932, the further expense of taking depositions should fall on the assured. Its counsel were accordingly directed to withdraw from the case and surrender the defense to the glass company. Counsel followed the instructions of their client and in December, 1932, they were granted leave to withdraw their appearance and the glass company thereafter entered into a contract with other attorneys to defend the suit. In so doing the substituted counsel made trips to New York to take depositions in the cause, had numerous conferences with Brodek's counsel, and ultimately effected a settlement by which Brodek was to receive $6,250 upon releasing all his rights and claims against Dearborn Glass Company for any possible liability based on the action then pending in the supe-

rior court and all claims arising therefrom. Of this sum he was paid $1,250 in cash by the Dearborn Glass Company and the balance of $5,000 was evidenced by an assignment to him by the glass company of all claims and rights had by the assured against the Indemnity Insurance Company, defendant herein. This assignment was executed May 3, 1933, and constitutes the basis of the action from which this appeal was prosecuted. In addition to the sum of $6,250 paid in the settlement of Brodek's claim, the glass company expended $410, in cash for defending the suit, taking depositions, making various trips to New York, and other expenditures incurred in preparation for trial. There was also paid to the attorneys, who negotiated the settlement, the sum of $325, for services rendered in preparing a defense and consummating the settlement. As heretofore stated, plaintiff seeks to recover damages, not only for a breach of the contract of indemnity, but also for breach of the supplemental agreement of July 29, 1932, under which it is claimed that the indemnity company was required to defend, independently of any obligation on their part arising out of the indemnity policy itself.

Considering first the supplemental agreement, we find that it was expressly executed "for the purpose of saving any and all the rights of the Indemnity Insurance Company of North America and the Dearborn Glass Company in relation to their respective claims." From the stipulation entered into upon the agreed case it was clearly "the intention of both Mr. Ross Grant, on behalf of defendant, and Mr. Schofield, on behalf of Dearborn Glass Company, to execute a non-waiver agreement that would merely preserve the *status quo*, and that would in no way give up or waive any rights under the insurance policy had by the Dearborn Glass Company or by the Indemnity Insurance Company of North America, or by either of them."

The agreement itself recites that "the Indemnity Company of North America insists that the claim for damages brought in the suit aforesaid is not covered by said policy or any other policy issued by it," and that "the Dearborn Glass Company insists that the damages claimed in the suit instituted against it by the said John Brodek is covered by the policy issued by the Indemnity Insurance Company of North America. . . ." It is evident that a difference of opinion existed between the representatives of the Dearborn Glass Company and those of defendant as to whether or not the policy of insurance covered the particular claim made by Brodek. Ross Grant, superintendent of claims for defendant, was of the opinion from the outset that the question of coverage was controlled by the decision of the Appellate Court in *Belleville Enameling & Stamping Co. v. United States Casualty Co.*, 266 Ill. App. 586, which he claimed as precisely in point under a similar policy, and on authority of that decision the defendant was not obliged under the policy issued to defend the suit instituted by Brodek against the assured. The Dearborn Glass Company fully understood that this was Grant's opinion, although it disagreed as to the legal effect of the decision. It may be assumed that if a petition for certiorari had not been filed in the Supreme Court the supplemental agreement would never have been executed and that defendant would have refused to defend the case on the ground that the assured's liability in the superior court suit was not covered by the policy. It clearly appears from the record that the controlling factor in Grant's mind was the decision of the Appellate Court in the *Belleville* case. He knew that a petition for certiorari would be filed in the Supreme Court, which, if granted, might eventually result in reversal of the judgment of the Appellate Court, and it was his desire,

as clearly expressed in the stipulation under the agreed case, to postpone a final decision as to whether or not his company would defend the suit until the Supreme Court should finally dispose of the *Belleville* case. It cannot fairly be argued that the supplemental agreement was executed for the purpose of extending the policy of insurance, or of giving to either of the parties any rights not contained in the policy. The agreement specifically provides that "nothing herein contained shall be construed as an admission or waiver on the part of either of the parties hereto to any of their respective rights against each other under the policy of insurance herein described or any policies issued by the insurance company to the Dearborn Glass Company prior thereto." Defendant thus retained all the rights which it had under the policy of insurance and if, as it contends, it was not required by that policy to defend the suit prosecuted by Brodek against the glass company, that immunity constituted one of the rights specifically provided for and contemplated by the agreement. It would be idle under the circumstances to search for the intention of the parties because the intention is clearly expressed in the stipulation on the agreed case. That stipulation states that the parties intended "to execute a non-waiver agreement that would merely preserve the *status quo.*" By *status quo* is meant "the existing state of things at any given date." (59 Corpus Juris 338; Bouvier's Law Dictionary; Webster's Dictionary.) It is therefore obvious that the parties intended and agreed that their respective rights and duties toward each other should remain the same as they were under the policy of insurance. There is no indication that either of the parties intended to give any rights to the other beyond those specified in the policy, or to create new duties, except in so far as the creation of new

duties was necessary to maintain the same legal relationship between the parties to preserve the *status quo* then existing between them.

Plaintiff's sole argument that the effect of the supplemental agreement imposed upon defendant the additional duty to defend the *Brodek* case to final judgment is based upon that part of the agreement which provides "that the Indemnity Insurance Company of North America undertakes and agrees to defend said suit for damages on account of alleged illness or disability claimed to have occurred on or prior to the 1st day of January, 1931, as alleged in the declaration filed in said cause." His counsel argue that the expression "undertakes and agrees to defend" obligated defendant to defend the suit to final judgment. However, the language of the contract does not so state, and the stipulation of the parties negatives any such contention. As a matter of fact, defendant did all that could reasonably have been required of it under the supplemental agreement up to the time that it withdrew from the case. The facts were fully investigated, various trips were made to Brooklyn, N. Y., defendant's counsel studied the law relative to the defense of the case, prepared briefs which were later turned over to the attorneys for the Dearborn Glass Company, and performed all acts incidental to the defense until certiorari was denied by the Supreme Court in the *Belleville* case and then withdrew from the case several months after the supplemental agreement was executed. There is nothing to indicate that the glass company was embarrassed by reason of such withdrawal, because the case was not on trial at the time and the substituted counsel had adequate opportunity to become fully familiar with the case before there was any likelihood of its being reached for trial. In fact, the agreed statement of facts shows that the substituted attorneys had been working together with

the indemnity company's counsel before the withdrawal, and were fully familiar with the issues involved. It therefore appears that the indemnity company did defend the case and did all that was required of it under the supplemental agreement until such time as its views as to the legal aspects of the case were confirmed by denial of certiorari in the *Belleville* case, *supra*. Therefore, if plaintiff has any cause of action it must be based on the indemnity policy itself, and not upon the provisions of the supplemental agreement.

This leads to a consideration of the ultimate question whether the policy or indorsements extended coverage to or required the indemnity company to defend the suit filed by plaintiff against the glass company for damages for an occupational disease or to pay the costs of investigation and suit. Stated more concisely, was plaintiff's suit for damages on account of an occupational disease included in the coverage provided by the policy? This question requires a consideration of paragraphs 1 (a) and 1 (b), the two coverage provisions of the policy. Paragraph 1 (a) reads as follows: "One. (a) To Pay Promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due,

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law, . . ."

Paragraph 1 (a) also contains the following provision: "It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall

be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy, while this Policy shall remain in force. *Nothing herein contained shall operate to so extend this Policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached."* (Italics ours.)

The indorsement referred to in the policy and attached thereto contains the following provision, followed by a specific designation of the various acts of the legislature included in the indorsement: "The obligations of Paragraph One (a) of the Policy to which this endorsement is attached include such Workmen's Compensation Laws as are herein cited and described *and none other*. (Italics ours.)

"House Bill No. 841, Session of 1913, as amended by Senate Bill No. 66, Session of 1915, Senate Bill No. 471 and House Bill No. 551, both Sessions of 1917, Senate Bill No. 384, Session of 1919, and Senate Bill No. 525, Session of 1921, State of Illinois, *all known and cited as the Workmen's Compensation Act,* and all laws amendatory thereof which may be or become effective while this Policy is in force." (Italics ours.) All the legislative acts specified are contained in the Workmen's Compensation Act and its various amendments up to 1921, and none of the six specified enactments contains the Occupational Diseases Act or any of its sections.

It is first urged by plaintiff that the policy of insurance expressly covers the employer's liability to pay compensation because of the occupational diseases covered by sec. 2 of the Occupational Diseases Act. He says that paragraph 1 (a) of the coverage provisions imposes a duty upon the insurer to pay compensation

to anyone entitled thereto under the workmen's compensation law, and that a claim for compensation under sec. 2 of the Occupational Diseases Act is a claim under that law. The answer to this argument lies in the fact that paragraph 1 (a) refers to an indorsement of a list of the legislative acts included within the scope of that paragraph, none of which as has been pointed out contains the Occupational Diseases Act or any of its sections. Moreover, paragraph 1 contains the provision hereinbefore set forth that nothing contained in paragraph 1 (a) shall operate to so extend the policy as to include within its terms any workmen's compensation law, scheme or plan not cited in an indorsement thereto attached, and also the provision preceding the indorsement which specifically states that the obligations of paragraph 1 (a) of the policy to which the indorsement is attached, include such workmen's compensation laws as are therein cited, *and none other*.

It is also argued that secs. 2 and 15 (b) of the Occupational Diseases Act constitute ''another workmen's compensation law.'' If that be true, the employer's liability under these two sections is nevertheless expressly excluded from the scope of the coverage of the policy. Whether the Workmen's Compensation Act was or was not incorporated by reference into sec. 15 (b) of the Occupational Diseases Act the two are still separate statutes, and the fact remains that only the compensation act is covered by paragraph 1 (a).

It is next urged that secs. 2 and 15 (b) of the Occupational Diseases Act are amendatory of the Workmen's Compensation Act. This argument is based upon that provision of the indorsement to the policy which specifies the particular enactments covered by paragraph 1 (a) and adds ''and all laws amendatory'

thereof.'' We take this clause in the indorsement to be simply a provision to care for further amendments of the Workmen's Compensation Act, because it is evident that the form of this particular indorsement was drafted in 1921, as shown by the last enactment referred to in the indorsement, and it therefor seems reasonable to conclude that it was intended by the last clause of the specification in the indorsement to include subsequent amendments to the acts specified. The courts of this State have specifically distinguished between an amendatory act and an independent legislative enactment which incorporates the terms of a former act by reference. Such a distinction is discussed in *People v. Crossley,* 261 Ill. 78, and also in *Zeman v. Dolan,* 279 Ill. 295, wherein the court said at p. 299: ''. . . That being the rule, and the act of 1895 not changing or amending section 98 but merely adopting it, the effect of the reference is the same as though section 98 had been incorporated bodily into the act of 1895, which thereby became a complete and independent act, free from constitutional objection.''

Plaintiff argues that the liability of the insurer is coextensive with that of the employer. This is not necessarily true because the liability of an employer to pay compensation is fixed by law, whereas that of an insurer is determined by the terms of the policy. Defendant's counsel suggest that if Brodek had filed a claim with the industrial commission in apt time and had been able to prove the facts alleged in his superior court declaration, he would have been entitled to compensation under the provisions of secs. 2 and 15 (b) of the Occupational Diseases Act, but they say it does not follow that the employer's liability to pay that compensation would be covered by the policy issued by defendant, and we think this position is entirely sound.

It is quite evident that Brodek's demand made in his suit filed against the Dearborn Glass Company was not a claim for compensation, and therefore his employer's liability in that suit was not covered by paragraph 1 (a) of the policy. Plaintiff's counsel takes the position that Brodek in his declaration stated such facts as would have supported a claim for compensation within the coverage of the policy, and that it was therefore the duty of defendant in this case to defend that prior suit on behalf of its assured. The fallacy of this argument lies in the fact that paragraph 1 (a) obligates the insurer to pay promptly to anyone entitled thereto the compensation provided for in the compensation act, and that Brodek did not by virtue of his suit in the superior court become entitled to compensation because the making of a claim for compensation is jurisdictional, and before a party may become entitled to compensation such a claim must be made. This Brodek failed to do. It was so held in *Lewis v. Industrial Commission,* 357 Ill. 309, wherein the court said (pp. 312, 313) : ''The making of a claim for compensation within the prescribed period is jurisdictional and a condition precedent to the right to maintain a proceeding under the statute. . . . No special form of claim for compensation is prescribed and the claim need not be in writing, but it must apprise the employer that the employee has sustained injuries of such a character as to entitle him to compensation *and that a claim therefor will be made.* . . . (Italics ours.) Likewise, in *Bushnell v. Industrial Board,* 276 Ill. 262, the court said (p. 264) : ''. . . It is not claimed that in either of the conversations it was intimated to the foreman of plaintiff in error that the injury was serious, or that Stewart had any cause for or intention of making a claim for compensation under this act on account of such injury, . . .''

It appears evident from the *Bushnell* and the following other cases announcing the same rule that a claim for compensation must not only apprise the employer of the nature of the injuries but must contain also a statement that the employee is claiming workmen's compensation. (*Northwestern Malt & Grain Co. v. Industrial Commission,* 313 Ill. 534, 538; *Haiselden v. Industrial Board,* 275 Ill. 114, 116; *Inland Rubber Co. v. Industrial Commission,* 309 Ill. 43, 48.)

The requirement that a claim for compensation be made is the same whether the employee's right exists under the compensation act or under the Occupational Diseases Act, inasmuch as both statutes provide in effect that no proceeding for compensation shall be maintained unless claim for compensation has been made within the time fixed by the statute. In this proceeding, for some reason not explained in the record, Brodek filed his action at law instead of making a claim for compensation after the lapse of a year and a half following the termination of his employment, and at that time he would have been barred from prosecuting a case before the industrial commission under the limitations of the statute. Had he filed a claim with the industrial commission at a time beyond the limit allowed by the statute, the insurer, although it might have been called upon to defend, might have raised that circumstance as a defense. The fact remains, however, that no claim for compensation was ever made by Brodek, and in the absence of such a claim there was no duty to pay compensation under the provisions of paragraph 1 (a). Consequently, even if Brodek had recovered a judgment against the Dearborn Glass Company, it is extremely doubtful if defendant would have been required to pay that judgment. The law being well settled that there is no duty upon the insurer to pay compensation under para-

graph 1 (a) until the claim therefor had been made, we think it follows that if the indemnity company had defended Brodek's suit it would not have been required to pay compensation to him, because the amount due under any judgment that might have been entered would not have been due under the Workmen's Compensation Act.

But plaintiff's counsel contend that the filing by Brodek of an action at law based upon certain sections of the Occupational Diseases Act is tantamount to making a claim for compensation under the compensation act or under the Occupational Diseases Act. It has been held, however, that the filing of an action under some statute other than the compensation act cannot be considered as the making of claim for compensation. In *Minor v. E. I. DuPont De Nemours & Co.,* 164 Tenn. 226, 47 S. W. (2d) 748, the court was required to determine whether a claim for compensation had been filed within the year. Plaintiff in that suit caused a summons to be served upon defendant requiring it to answer ''in an action to his damage in the sum of five thousand dollars for personal injuries.'' In holding that the commencement of such a suit for damages did not constitute 'the making of a claim under the compensation act, the court said, pp. 230, 231: ''The action of petitioner in causing the issuance and execution of the summons, on June 19, 1930, cannot be given effect or treated as the filing of a 'claim for compensation.' The summons followed the form of an ordinary action for damages for personal injuries, and would have supported a declaration of a common-law right of action for damages. It conveyed no notice either to the court or the defendant that the injury sustained by petitioner arose out of his employment by defendant, *or that a claim for compensation under the act of 1919, rather than damages under the*

*common law, would be the subject of the declaration or petition to be filed.''* (Italics ours.)

The same question arose in *Georgia Casualty Co. v. Ward* (Tex. Civ. App.), 220 S. W. 380, and also in *Cruse v. Chicago, R. I. & P Ry. Co.,* 140 Kan. 704, 38 P. (2d) 672, and in both instances it was held in effect that a suit at law which specifically claims compensation under the Workmen's Compensation Act was not a claim for compensation. *Hill v. Kerens-Donnewald Coal Co.,* 210 Ill. App. 560, holds in effect that a claim for compensation cannot be maintained in a court of general jurisdiction. It appears reasonably clear that Brodek, by filing suit against his employer, disavowed any rights under the compensation act or under sec. 2 of the Occupational Diseases Act, and under the foregoing decisions he cannot now assert that such a claim for compensation was made as to require the indemnity company to make payment to him under paragraph 1 (a).

Plaintiff's counsel characterize Brodek's failure to assert that he was entitled to compensation as ''a mere procedural requirement,'' but the statute and decisions interpreting it are plain and his effort to collect damages at law negatived any contention now made that the assertion of a claim for compensation ought to be considered as a mere formality.

From the conclusion that Brodek's claim did not fall within the provisions of paragraph 1 (a) because it was not a claim for compensation, we pass to a consideration of the question whether it was embraced within the provisions of paragraph 1 (b), which reads as follows: ''One. (b) To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the terri-

torial limits of the United States of America or the Dominion of Canada. In the event of the bankruptcy or insolvency of this Employer the Company shall not be relieved from the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency, an execution against this Employer is returned unsatisfied in an action brought by the injured, or by another person claiming by, through or under the injured, then an action may be maintained by the injured, or by such other person claiming by, through or under the injured, against the Company under the terms of this Policy for the amount of the judgment in said action not exceeding the amount of this Policy." This coverage provision of the policy can be disposed of without an extended discussion because plaintiff admits (on p. 43 of his brief) that he is "not relying upon the provisions of One-(b), although in our argument we shall refer to this provision in passing." Obviously, the reason for this position is that a claim under this paragraph of the policy would bring plaintiff in conflict with the decision in *Belleville Enameling & Stamping Company v. United States Casualty Co.*, 266 Ill. App. 586, wherein the Supreme Court later denied certiorari (266 Ill. App. XV). In that case defendant had issued to plaintiff a policy which appears to have been identical in its provisions with the one involved in this case. Several employees brought action against the assured under sec. 1 of the Occupational Diseases Act, alleging that they had contracted silicosis during their employment. The insurer refused to defend and judgments were obtained or settlements made, which were paid by the assured who then sued under the indemnity provisions of paragraph 1 (b). The claims made by the employees were for occupational diseases and not

for accidental injuries. The court held that there was no coverage under the policy, relying upon paragraph 7, which is identical in its wording with the same paragraph of the policy herein involved, and provides: "Seven: This agreement shall apply only to such injuries so sustained by reason of accidents occurring during the Policy period limited and defined as such in Item 2 of said Declarations."

Other cases in this State have consistently held that an occupational disease is not an accidental injury. In *Labanoski v. Hoyt Metal Co.*, 292 Ill. 218, which was a suit for damages caused by an occupational disease contracted by an employee, the court said that the words "accidental injury or death," are used and are to be understood in their popular sense; that an occupational disease, such as lead poisoning, does not occur suddenly, but is a matter of slow development, and the Occupational Diseases Act was passed for the protection of employees from such diseases. The same conclusion was reached in *Peru Plow & Wheel Co. v. Industrial Commission*, 311 Ill. 216, where a claim was lodged under the compensation act for disability resulting from tuberculosis contracted by an employee alleged to have resulted from working as a machinist operating a lathe which caused a fine dust that superinduced the disease. The court said that occupational diseases are not covered by the compensation act; that "an accident, as distinguished from an occupational disease, as the former is contemplated under the Compensation Law, arises by some definite event the date of which can be fixed with certainty, but which cannot be so fixed in the case of occupational diseases," and that in order that the disability be by reason of an accidental injury or the result of an accident it must be traceable to a definite time, place and cause. Brodek's declaration does not allege that he suffered

such injuries as to justify a claim against his employer within the coverage provided by paragraph 1 (b), and his counsel, evidently realizing this, have preferred to rely on the coverage provisions of the policy provided in paragraph 1 (a).

The remaining contention of plaintiff, and perhaps the principal ground upon which he seeks to recover, arises under the provisions of paragraphs 3 and 4 of the policy, which read as follows: ''Three. To Defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent.

''Four. To Pay all costs taxed against this Employer in any legal proceeding defended by the Company, all interest accruing after entry of judgment and all expenses incurred by the Company for investigation, negotiation or defense.''

The gravamen of plaintiff's contention with reference to these two paragraphs is that it was the duty of the indemnity company to defend, irrespective of its duty to pay compensation or to indemnify the employer, and that such duty was broader than either of the other two. It is argued that the use of the terms ''groundless, false or fraudulent,'' imposes upon the insurer the duty to defend any action which might be instituted against the insured, irrespective of its basis, and also that the duty to defend existed even though the policy did not extend coverage to pay a judgment or to indemnify the employer. Among the numerous cases cited by plaintiff to substantiate his position that the indemnity company was required, under paragraph 3, to defend all suits, whether ''groundless, false

or fraudulent," we find none imposing upon an insurer the duty to defend a suit which is not covered by the indemnity provisions of the policy. Most of the decisions cited are cases in which the suits' filed against the various assureds specify as one ground of damage a type of liability covered by the policy. Several of the cases involve situations in which several bases of liability were asserted, some of which fell within the coverage provisions of the policies and others of which did not.

After a careful consideration of the authorities cited by the respective parties, we have reached the conclusion that defendant's position, that it was not obliged to defend a suit predicated upon a ground of liability not covered by the policy, is supported by abundant authority. What is meant by the requirement that the insurer undertakes to defend the suit whether "groundless, false or fraudulent?" If a plaintiff alleges in his pleadings that he is entitled to recover upon a ground of liability covered by the policy, then of course the defendant's insurance carrier must defend the suit; it cannot avoid that duty by determining upon its own investigation that the ground of liability alleged cannot be substantiated. If the suit is without merit it is the duty of the insurer to defend and demonstrate that fact to the court or jury. And, as defendant's counsel point out, if the declaration filed should be based upon a ground of liability covered by the policy, but it should turn out at the trial that the true basis of liability, if any, is one not covered, then the indemnity company could have the case dismissed on the ground of variance. Defendant contends for the rule that if the insurance carrier would be required to pay a judgment or indemnify the insured in the event the plaintiff prevailed, then it must defend, otherwise it need not defend, and we believe this rule

is sustained by the great weight of authority. The recent case of *Fessenden School, Inc. v. American Mut. Liability Ins. Co.,* decided by the Supreme Court of Massachusetts in 1935, and reported in 289 Mass. 124, 193 N. E. 558, supports this rule. In that case plaintiff operated a school for boys and employed one Ada Gauthier as head waitress. She was paid $50 a month and given free room and board. Plaintiff carried an insurance policy with defendant designated as a "standard Workmen's Compensation and Employers' Liability Policy," by which the insurance company agreed with the employer, as respects personal injuries sustained by employees, to indemnify the employer "against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed. . . . On her way to the bathroom Ada Gauthier fell down a stairway, due to the poor lighting of the corridor that led to the bathroom. She filed a common law action against plaintiff, alleging on one count that she was employed by Fessenden; that by reason of the fact that she was given lodging as part of her pay she became a tenant; and that the Fessenden School negligently failed to keep the premises safe. In another count she alleged that she was an employee, and because of that relationship she became an invitee and was injured because of the defective condition of the premises. Before trial there was an amendment, which removed the allegation that she was an employee. The indemnity company refused to defend and the Fessenden School defended and obtained a judgment in its favor. Thereafter Ada Gauthier filed her claim for compensation which was settled by the defendant insurance company and subsequently the Fessenden School sued defendant for the cost of defending the common law action. In discussing the duty

of the indemnity company to defend the Gauthier suit, the court said (p. 130): "It is plain that the insurance company would not have been bound under its policy to indemnify the plaintiff if the plaintiff Ada Gauthier had recovered judgment on her declaration against the Fessenden School, Incorporated, as amended. We think the contention of the defendant is sound, that the obligation of the defendant insurance company is to be determined by the allegations of the declaration *and it is not required to defend if it would not be held bound to indemnify the defendant in the action if the plaintiff prevailed upon the allegations of the declaration.*" (Italics ours.) "*Ocean Accident & Guarantee Corp. v. Washington Brick & Terra Cotta Co.,* 148 Va. 829, 139 S. E. 513; *Fulton Co. v. Massachusetts Bonding & Ins. Co.,* 138 Tenn. 278, 197 S. W. 866; *Bloom-Rosenblum-Kline Co. v. Union Indemnity Co.,* 121 Ohio St. 220, 167 N. E. 884; *United States Fidelity & Guaranty Co. v. Yazoo Cooperage Co.,* 157 Miss. 27, 127 So. 579; *United States Fidelity & Guaranty Co. v. Baldwin Motor Co.* (Tex. Com. App.), 34 S. W. (2d) 815; *Fidelity & Casualty Co. of New York v. Stewart Dry Goods Co.,* 208 Ky. 429, 271 S. W. 444, 43 A. L. R. 318."

In the Massachusetts case the court obviously held that no coverage existed because after the declaration was amended the suit was based upon the relationship of landlord and tenant and not that of employer and employee. As we view Brodek's suit in this proceeding, his claim did not fall within the indemnity provisions of paragraph 1 (b) because it did not allege that an accidental injury had occurred, nor did it fall within the provisions of paragraph 1 (a) because it was not a claim for compensation, and, just as no duty rested on the insurance carrier in the Massachusetts case to pay any money under the indemnity provisions of the policy, so in this proceeding the insurance car-

rier had no duty to indemnify the glass company under the provisions of its policy. Apparently the argument in the Massachusetts case was the same as that of the plaintiff in this case, namely, that the defense provisions of the policy were broader than the indemnity provisions, but the court in the Massachusetts case held that the insurer need not defend unless it would have been required to pay a judgment, and we hold that to be the correct rule.

The courts of various other States have approved this doctrine. In *Ocean Acci. & Guarantee Corp., Ltd. v. Washington Brick & Terra Cotta Co.*, 148 Va. 829, 139 S. E. 513, defendant had issued a policy of compensation and employers' liability insurance containing a defense clause precisely the same as the one in this case. An employee of plaintiff, who was under age and therefore illegally employed, was killed, and a common law action was brought for his death. The insurance company withdrew from the defense, and in holding that no duty to defend existed, the court said (p. 843): "It is contended, however, by counsel for the brick company, that the insurer was bound by the terms of its policy to defend all suits and actions, or other proceedings, instituted against the employer; basing the argument in this respect upon the third clause of the policy. . . . It is true that the provisions of the policy alluded to may have the effect of binding the insurer to defend all suits, although 'such suits, or other proceedings, allegations, or demands are wholly groundless, false or fraudulent,' as stated in the policy. It is scarcely logical to hold that this provision concerning the right and obligation to defend the suit, which is often contained in the indemnity policies, would be intended to bind the insurer to take charge of and defend a suit in which, under the terms of the policy, it had no interest. . . ."

388

In *Lunt v. Aetna Life Ins. Co.*, 261 Mass. 469, 159 N. E. 461, the court, in discussing the provisions of a similar policy, held (p. 472): "As we construe the policy, the insurance company was not obliged to defend actions not covered by the policy. Its undertaking in this respect was limited to the defense of actions brought against the insured for actions which were covered by the policy."

In *United Waste Mfg. Co. v. Maryland Casualty Co.*, 85 Misc. 539, 148 N. Y. Supp. 852 (affirmed 169 App. Div. 906, 153 N. Y. Supp. 1148) defendant had issued a policy of employer's liability insurance to plaintiff, who was sued by an employee. The indemnity company refused to defend because plaintiff was illegally employed. The court held that defendant was within its rights, and said (148 N. Y. Supp. 858): "The defendant was obliged to investigate and defend all suits brought against the insured, even if groundless, . . . But that requirement did not, and could not, call upon the defendant to defend an action for which under the terms of the policy it was not liable. That is not what is meant by the provision with reference to defending suits even if groundless."

Upon oral argument plaintiff's counsel cited and relied on the case of *Oscar Heineman Corp. v. Standard Surety & Casualty Co. of New York,* which had then not been published but may now be found in 289 Ill. App. 358. In that case an employee's suit against the employer was based upon sec. 1 of the Occupational Diseases Act. Upon the refusal of the indemnity company to defend, the employer interposed a defense and then sued the insurer for attorney's fees and expenses. The court held, under provisions similar to those contained in the policy in this case, that it was the duty of the insurer to defend. That case, however, is readily distinguishable from this proceeding, by rea-

son of the fact, which does not appear in the opinion but is set forth clearly in the record, that the indorsements on the policy in the *Heineman* case specifically covered the liability of the insured under the Workmen's Compensation Act and also under both secs. 1 and 2 of the Occupational Diseases Act, whereas in this proceeding the policy expressly limits the coverage to the liability of the assured under the Workmen's Compensation Act.

From the various decisions hereinbefore quoted and others discussed in defendant's brief we hold that the language of the policy requiring insurer to defend suits which may be instituted against the employer must be read in connection with the fundamental contractual obligation appearing upon the face of the contract between the parties. In this proceeding the insurer agreed to indemnify the employer only for accidental injuries, or for compensation, and Brodek's suit does not come within the category of either of these coverage provisions of the policy and therefore there was no obligation on the part of the indemnity company to defend.

We find no convincing ground for reversal. The judgment of the municipal court is affirmed.

*Judgment affirmed.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.