Canadian Radium and Uranium Corporation, Appellant, v. Indemnity Insurance Company of North America, Appellee.

Case No. 45,124.

Opinion filed January 31, 1951. Rehearing denied February 20, 1951. Released for publication March 13, 1951.

HINSHAW & CULBERTSON, of Chicago, for appellant; OSWELL G. TREADWAY, of Chicago, of counsel.

VOGEL & BUNGE, of Chicago, for appellee; L. H. VOGEL, GEORGE C. BUNGE and Kenneth H. Hanson, all of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Canadian Radium & Uranium Corporation, through extensive research, perfected a process for the production of radon ointment, and developed, perfected and patented certain necessary equipment. It wished to maintain a laboratory in the middle west for the production and distribution of radon ointment and, accordingly, on or about June 1, 1944, entered into an agreement with the Radium Luminous Industries, Inc., an Illinois corporation, the name of which was afterwards changed to Radium Industries, Inc., whose plant was located at 712 South Federal street, Chicago, by which it gave and granted to the Radium Industries, Inc., a license to produce and distribute radon ointment in accordance with the specifications of the licensor. The licensor agreed, among other things, to deliver to the licensee, a sufficient amount of radium in solution for the production of the ointment together with a satisfactory emanator and other necessary equipment and supplies, including boxes, tubes, containers, stationery and other items, title to which was to remain in the licensor. The licensee agreed to furnish and maintain suitable space, heat, light and telephone in Chicago, and to furnish all necessary labor to produce and distribute the ointment, to invoice purchasers of the ointment in the name of the licensor at prices and upon terms to be determined by the licensor, and to be responsible for the collection of the invoices.

On February 3, 1945, the Indemnity Insurance Company of North America issued its comprehensive general liability policy to the Canadian Radium & Uranium Corporation, by the terms of which it undertook, among other things, to insure the latter against bodily injury liability in the sum of $100,000 for each person, and in the sum of $200,000 for each accident for the policy period from February 3, 1945, to February 3, 1946, in accordance with the insuring agreements, exclusions and conditions therein contained.

The insurer agreed to pay on behalf of the insured all sums which it should become obligated to pay by reason of the liability imposed upon it by law for damages "because of bodily injury, sickness or disease . . . sustained by any person or persons and caused by accident," and to defend in its name and behalf any suit against it alleging such injury, sickness or disease, and seeking damages on account thereof "even if such suit is groundless, false or fraudulent."

Canadian Radium & Uranium Corporation entered upon the performance of the agreement and furnished to the licensee quantities of radium in solution for the production of the ointment, emanators and other necessary equipment for the production thereof. The licensee proceeded to produce and distribute the ointment in accordance with the terms of the agreement. During the period of approximately seven months ending June 20, 1945, Mary Moore was continuously employed by Radium Industries, Inc., and was working in and about the manufacture of the ointment at the premises mentioned. She claimed to have sustained bodily injuries by reason of the radioactivity of the radium, its compounds and decay products, and the manner in which it was required to be handled in the production of the ointment. On November 8, 1945, she filed a complaint for damages of $200,000 in the United States District Court for the Northern District of Illinois, Eastern Division, against Canadian Radium & Uranium Corporation. The latter gave to the insurance company immediate notice of the claim of Mary Moore as required by the policy of insurance, and forwarded to it the summons and the complaint in the suit, demanding that the insurer defend the suit in the name and on behalf of the insured in accordance with the provisions of the policy. The insurer refused to defend the insured in the suit, contending that there was no coverage under the policy on the purported

ground that the injury claimed by Mary Moore did not arise out of an accident.

Because of the refusal to defend, the insured was required to defend the suit, to employ attorneys to represent it, to investigate the facts and to prepare for the trial. On April 6, 1946, Mary Moore offered to settle her claim for $2,500, which the insured considered, in view of the claimed seriousness of her alleged injuries, the probability that she would be able to produce evidence tending to prove her charges and the expense which it would incur in a proper defense, to be advantageous. Thereupon, the insured served notice on the insurer to pay Mary Moore $2,500, or otherwise settle the cause, or that it would do so and hold the insurer for reimbursement. The insurer failed to pay the $2,500 or otherwise settle the cause. On April 8, 1946, the insured paid $2,500 to Mary Moore, took her quittances therefor and the suit was dismissed. On July 3, 1946, the Canadian Radium & Uranium Corporation filed its complaint in the superior court of Cook county against the Indemnity Insurance Company of North America for breach of the defense provisions of the policy. Plaintiff asked, in addition to the $2,500 paid to Mary Moore in settlement of her suit, further sums necessarily paid out in attorneys' fees in the defense of and in preparation for the trial of that cause and in investigating the facts surrounding the occurrence and alleged injuries; also sums to physicians and surgeons in and about making physical examinations of Mary Moore; the sums for taking depositions of witnesses; for the advice and services of scientists trained in the handling of radioactive substances, and in arranging for witnesses to be present at the trial of that cause, making a total of $6,963.96, which plaintiff declared it would not have been obliged to pay if the defendant had not violated the provisions of the insurance policy. Plaintiff asked

judgment for $6,963.96, together with interest thereon from April 8, 1946, also its reasonable attorneys' fees, as a part of its taxable costs, and the sum of $500 as provided by sec. 155 of the Illinois Insurance Code (par. 767, ch. 73, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 66.830]). The court sustained defendant's motion for judgment on plaintiff's complaint and entered judgment accordingly, from which plaintiff prosecutes this appeal.

██ It is well settled that where the cause of action stated is within the coverage provided by the policy, it is the insurer's duty to defend. *Brodek v. Indemnity Ins. Co. of North America,* 292 Ill. App. 363, 384. Where the complaint states different causes of action or theories of recovery, one of which is within the coverage and others which may not be, the insurer is bound to defend with respect to those which, if proven, would be within the coverage. *Christian v. Royal Ins. Co.,* 185 Minn. 180, 182, 240 N. W. 365, 382. Plaintiff maintains that the complaint filed in the Federal Court suit states a cause of action within the coverage provided by the policy in that the claim of Mary Moore is for "damages, . . . because of bodily injury, sickness or disease . . . sustained . . . and caused by accident." Plaintiff asserts that the defendant having breached its contract to defend, is liable to it for its costs and expenses paid out in disposing of the litigation, that the judgment should be reversed and that it should have judgment for the aggregate of these items. Defendant insists that the complaint filed by Mary Moore does not allege a claim for damages because of bodily injuries, sickness or disease "caused by accident" within the coverage of the policy. To understand the issue thus presented, it is necessary to closely examine the complaint of Mary Moore against the Canadian Radium & Uranium Corporation, which reads as follows:

461

"1. Plaintiff is a citizen and resident of the State of Illinois. The defendant is a corporation organized and existing under the laws of the State of New York. The matter in controversy in this action exceeds, exclusive of interest and costs, the sum of $3,000.00.

"2. On or about June 20, 1945 and for a long period, to wit, about four years, prior thereto the defendant was in the business of buying and selling radium and substances containing radium; of manufacturing and selling products containing radium; of manufacturing and selling radioactive products.

"3. Radium, radium compounds, and radioactive substances are inherently and imminently dangerous and ultrahazardous substances, in that they are the source of certain radiations or emanations that cause burns and other morbid conditions in the tissues of the human body. The dangerous character of said substances is enhanced by the fact that the harmful effects are brought about insidiously.

"4. During the period of approximately seven months ending on or about June 20, 1945 a certain contract was in existence between the defendant and Radium Industries, Inc., an Illinois corporation; under the terms of said contract Radium Industries, Inc., was manufacturing an ointment known as, to wit, radon ointment and also known as, to wit, alphatron; defendant furnished the equipment and materials for such manufacture and the plans and methods thereof; the product was sold by, and the sale thereof was promoted by the defendant. Radium Industries, Inc., furnished the labor for carrying on such manufacture.

"5. The manufacture of said ointment was carried on in a building on premises commonly known as, to wit, No. 712 South Federal Street, in the City of Chicago, County of Cook and State of Illinois.

"6. During said period of approximately seven months ending on or about June 20, 1945, the plaintiff

462

was continuously an employee of the said Radium Industries, Inc., and was working in and about the manufacture of said ointment at the premises aforementioned.

"7. Said ointment was represented by the defendant as having therapeutic value by reason of the fact that it was radioactive, that is to say, it emitted certain radiations or emanations that had an effect on human tissues. In manufacturing said ointment heavy oil was impregnated with emanations from a solution containing radium, and by reason of such impregnation the oil became radioactive. In the process of manufacture certain equipment known as, to wit, emanators, syringes, shakers, and other devices were used; the said emanators contained a large quantity of radium, to wit, about 596 milligrams.

"8. In doing the work aforesaid the plaintiff came in close proximity to the said radium, to radioactive vapor from a solution of radium, and to other radioactive substances, and by reason of such proximity the plaintiff was exposed to the hazard of having her tissues deleteriously affected by the radioactive emanations from said materials; and in consequence of such continued exposure the plaintiff's hands and other parts of her body were affected by said radioactive emanations and became diseased and afflicted with radium poisoning.

"9. The plaintiff was then and there and prior thereto and at all times mentioned herein in the exercise of due and proper care and caution for her own safety.

"10. The plaintiff before and during said employment did not know, and had no reason to know, of the risk incident to exposure to radium and radioactive substances. The plaintiff had had no education or experience relative to radium.

"11. Prior to the plaintiff's entering on said employment, the defendant through a certain agent rep-

463

resented to the plaintiff that there was no risk or hazard of deleterious effects from the radium used in said work, and said representation was made in order to induce plaintiff to accept said employment. Plaintiff entered on said employment in reliance on said representation.

"12. The said emanators, the radium therein, and other equipment were then and there owned by the defendant. The materials, the oil and the completed product were then and there the property of the defendant and sold to the public as the property of the defendant.

"13. In carrying on said business of selling radioactive ointment and arranging for the manufacture thereof the defendant was then and there engaged in an ultrahazardous activity; the defendant recognized, or should have recognized, that such activity was likely to harm the plaintiff by the unpreventable miscarriage of such activity. The said harm suffered by the plaintiff resulted from the use of radium and radioactive materials, which made said activity ultrahazardous.

"14. The defendant, by reason of its long experience dealing in radium, then and there knew or ought to have known of the dangers and risks of bodily harm incident to working with radium.

"15. The defendant has not elected to provide and pay compensation for occupational diseases pursuant to Section 4 of the Illinois Workmen's Occupational Diseases Act.

"16. By reason of the facts above stated the defendant is liable to the plaintiff for her damages hereinafter mentioned.

"17. The defendant by its negligent and wrongful conduct caused the plaintiff to sustain said damages and bodily harm in one or more of the following respects, to wit:

"(a) The defendant being the owner of said radium negligently and carelessly failed and omitted to warn

the plaintiff of the dangerous character thereof, and on the contrary through its agent represented that there was no risk or hazard or bodily harm connected with it.

"(b) The defendant negligently and carelessly provided plans and methods of doing the work, which plans and methods involved an undue, unnecessary and excessive exposure of the plaintiff to the said radioactive emanations.

"(c) The defendant negligently furnished defective emanators and other equipment, which resulted in the plaintiff's being exposed to a dangerously excessive amount of said radioactive emanations.

"(d) The defendant by its agent wilfully represented to the plaintiff that there was no hazard of disease or injury from radium in said work, and the plaintiff relied on said representation in accepting said employment.

"18. By reason of said injury to plaintiff's health the plaintiff has suffered and will in the future suffer great mental and physical pain, shock and anguish; since said last mentioned date the plaintiff has been sick, sore, crippled and disordered, and will so remain in the future during her lifetime; plaintiff has been and will in the future be prevented from and hindered in following any occupation, thereby losing divers large sums of money she would otherwise have made and acquired; plaintiff has been obliged to expend or become liable for a large sum of money, to wit, $2000.00 in and about endeavoring to be relieved of said disease.

"19. The plaintiff therefore asks judgment against the defendant in the sum of Two Hundred Thousand Dollars ($200,000.00)."

Plaintiff calls attention to the fact that the policy in the instant case is not a Workmen's Compensation policy, but a so-called "Comprehensive Liability Policy" intended to cover the area of liability beyond that covered by Workmen's Compensation policies and

465

other types of liability policies covering limited areas of liability; that Mary Moore was not an employee of the plaintiff, but an employee of Radium Industries, Inc.; that the relationship of employer and employee did not exist between the plaintiff and Mary Moore; and that the narrow construction placed upon the word "accident" by the courts in applying the Workmen's Compensation Act of Illinois has no application to the use of the word in the policy under consideration. Plaintiff states that the policy extends coverage to "injury, sickness or disease" caused by accident and contemplates that not only injury but sickness or disease may be so caused, and that the policy does not limit the words "caused by accident," nor does it exclude coverage for occupational disease. Plaintiff urges that the Federal court complaint states a common-law action of injury by means of the radioactivity of the radium due to negligence of the plaintiff, and that the disability sustained, be it injury, sickness or disease, was caused by accident; that according to that complaint Mary Moore's condition of ill-being was unforeseen and unexpected on her part and would not have happened except for the alleged negligence of plaintiff; and that the fact, if it was the fact, that her condition may have been caused by a series of exposures to radioactivity over a period of some months is of no importance, nor any indication that it was not caused by accident. Plaintiff asserts that injuries sustained by repeated exposures to X rays have uniformly been held to be caused by accident; that the same is true where the injury is caused by a series of traumatic concussions or abrasions; that the term "occupational disease" is relative; and that denominating a disability as such is not determinative that it was not caused by accident.

 We find that Mary Moore alleged in her complaint that she contracted an occupational disease and

that by reason of her continuous exposure to radium, radium compounds and radioactive substances for several months prior to June 20, 1945, she "became diseased and afflicted with radium poisoning." The fact that she so regarded it is borne out by paragraph 15 of her complaint, specifically alleging that the defendant therein had not elected to provide and pay compensation for occupational diseases pursuant to sec. 4 of the Illinois Workmen's Occupational Diseases Act (par. 172.4, ch. 48, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 143.16 (4)]). The purpose of this allegation was to negative the possibility that the insured, by reason of having elected to pay compensation under the Occupational Diseases Act, had a complete defense to her claim under sec. 29 of that Act (par. 172.29, ch. 48, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 143.16 (29)]). Paragraph 3 of the Moore complaint avers that radium, radium compounds and radioactive substances are "inherently and imminently dangerous and ultrahazardous substances, in that they are the source of certain radiations and emanations that cause burns or other morbid conditions in the tissues of the human body," and that the "dangerous character of said substances is enhanced by the fact that the harmful effects are brought about insidiously." It will be observed that paragraph 13 of her complaint avers that the defendant therein recognized, or should have recognized, that such activity was likely to harm her by "the *unpreventable* miscarriage of such activity," and that the harm suffered by her resulted from the use of radium and radioactive materials "which made said activity ultrahazardous." (Italics supplied.)

In *Labanoski v. Hoyt Metal Co.*, 292 Ill. 218, the court held that lead poisoning contracted by an employee from contact with fumes and vapors over a period of two months was an occupational disease and "not accidental injury" or the "result of an accident"

467

so as to be covered by the Workmen's Compensation Act, on the ground that an "accident" is generally regarded as an event occurring at a specific time and place, and said (221): "The words 'accidental injury or death' are used and are to be understood in their popular sense." In *Peru Plow & Wheel Co. v. Industrial Commission*, 311 Ill. 216, where the employee became ill from working in air impregnated with metal dust for a period of years, the court said (222):

"The rule recognized in this State is, that in order that the disability be by reason of an accidental injury or the result of an accident it must be traceable to a definite time and place of origin. There must be some definite thing happen which can be pointed to as the immediate cause of the breakdown, although the employee may have been able to work in similar conditions for a considerable period of time prior to the happening of the event which was the immediate cause of his breakdown."

Plaintiff argues that the word "accident" as used in the insurance contract, should be given a broader meaning and that it should be extended so as to include occupational diseases gradually contracted over a period of time, as well as accidents which are "traceable to a definite time and place of origin" on the theory that the contraction of the disease or illness was "accidental" in the sense of being unforeseen. Some of the cases cited by plaintiff support this theory.

While the *Labanoski* and *Peru Plow & Wheel Co.* cases involved a construction of the Workmen's Compensation Act, we are satisfied that they are persuasive authority in support of defendant's contention that the word "accident" in the policy in the case at bar must be traceable to some definite time and place. In *Belleville Enameling & Stamping Co. v. United States Casualty Co.*, 266 Ill. App. 586, certain employees brought suit against the insured for damages by

468

reason of silicosis contracted while employed in its enamel plant. The insurer refused to defend the suit on the ground that the claims did not arise out of "accidents" within the meaning of a special policy called "Standard Workmen's Compensation and Employers' Liability Policy." The insured then settled the claims and brought suit against the insurer under the policy. The court, on a stipulation of facts, found the issues in favor of insured and assessed its damages at and entered judgment for $17,539.72, the total amount paid out in settlement of the silicosis suits, together with interest and costs. On appeal the insured contended that in the policy the insurer undertook to protect it against loss for all damages recovered against it by employees for personal injuries sustained in their employment. The insured in that case said that two kinds of personal injuries were covered by the policy, namely, (a) those covered by the Workmen's Compensation law, and (b) all injuries to employees to which damages, as distinguished from compensation, are recoverable. It was conceded that silicosis was not an injury by accident, as would bring it under the terms of the Workmen's Compensation Act, but an occupational disease contracted by persons engaged in sandblasting. The insured in that case further contended that the purpose of paragraph 7 in that policy that the agreement "shall apply only to such injuries so sustained by reason of accidents occurring during the policy period," was to define the time limits of the policy, and that the word "accidents" was used in the sense of "occurrences" rather than in the more restricted sense, and that a complete consideration of all the terms of the policy showed that it was intended to cover all losses where the employer was required to pay damages on account of personal injuries to employees legally employed. The court held that silicosis was not an injury from "accident" within the meaning of the policy, and that

accordingly the insurer was not liable and was under no duty to defend with respect to the claims. In *Brodek v. Indemnity Ins. Co. of North America,* 292 Ill. App. 363, 381, the court held that chemical poisoning contracted by an employee from contact with dangerous fumes and gases over a period of time was an occupational disease and did not constitute an accidental injury within the meaning of a similar Employers Liability Policy, and that the insurer was not obligated to defend the claims of the employees. The court, after discussing the *Belleville Enameling & Stamping Co.* case, commented that other cases in this State have consistently held that an occupational disease is not an accidental injury. We are convinced that under the Illinois authorities the word "accident" as used in the policy in the instant case, requires the disability to be traced to a definite time and place of origin; that Mary Moore did not aver that her disability was caused by an "accident" within the meaning of the policy; and that, therefore, her case was not covered by the policy.

■ Plaintiff states that the policy is a New York contract and not an Illinois contract; that there is no indication therein that the use of the words "caused by accident" is to be construed with reference to the terms and provisions of the Illinois Workmen's Compensation Act; and that her suit was a common-law action and could not in any way be controlled by the terms and provisions of that Act. The New York courts have interpreted the word "accident" as used in such a policy, in the same way as have the Illinois courts. The New York Court of Appeals holds that an "accidental injury" under the Workmen's Compensation law of that State "must be assignable to a single act identified in space and time" and must also "be assignable to something catastrophic or extraordinary." Occupational diseases or illnesses contracted

470

over a period of time are not "accidents" under the New York decisions. *Jeffreyes v. Chas. H. Sager Co.,* 198 App. Div. 446, 191 N. Y. Supp. 354, aff'd 233 N. Y. 535, 135 N. E. 907; *Lerner v. Rump Bros.,* 241 N. Y. 153, 149 N. E. 334; *Rosenthal v. National Aniline & Chemical Co.,* 216 App. Div. 588, 215 N. Y. Supp. 621. In *Jackson v. Employers' Liability Assurance Corp.,* 139 Misc. 686, 248 N. Y. Supp. 207, aff'd 234 App. Div. 893, 254 N. Y. Supp. 1010, and 259 N. Y. 559, 182 N. E. 180, suit was brought against the owner of a tenement house for the death of the infant child of one of his tenants, claimed to have been caused by the unheated, cold, damp, unsafe and unhealthful condition of the tenement house. His insurer under a policy of public liability insurance refused to defend the action on the ground that the claim was not for injuries resulting from "accident" within the meaning of the policy. In sustaining the insurer's position, the court said (210):

"The word 'accident' in the point of view of the average man, conveys a sudden and instant happening, an event of the moment rather than a condition which continues to develop, progress, and change through a period of time. According to the mental conception of the average man, it means a happening, not only unexpected and unusual, but one referable to a definite and fixed period of time."

In the *Jackson* case the court pointed out that sunstroke, tuberculosis, pneumonia and rheumatism, although diseases, have also been classed as accidents when resulting from causes of a sudden and catastrophic character. It is manifest that the New York and Illinois courts are in agreement on the issue presented.

We agree with defendant's contention that the terms and provisions of the policy demonstrate

471

that the word "accident" is used therein to signify an event referable to a definite time and place and not to a disease contracted over a period of time. The policy provides that notice shall be given to the insurer as soon as practicable "upon the occurrence of an accident," which notice is to state the "time, place and circumstances of the accident." If the word "accident" be enlarged to include an occupational disease contracted, as in the case at bar, gradually over a period of seven months, this clause would become meaningless. The observation of the Supreme Court in the *Peru Plow & Wheel Co.* case that the word "accident" was used in the Workmen's Compensation Act as referable to an event traceable to a definite time and place, is applicable to the notice and provision in the policy in the instant case. See also *United States Radium Corp. v. Globe Indemnity Co.*, 13 N. J. Misc. 316, 178 Atl. 271, aff'd 116 N. J. L. 90, 182 Atl. 626; *Taylor Dredging Co. v. Travelers Ins. Co. of Hartford, Conn.*, 90 F. (2d) 449. In her complaint, Mary Moore averred that she contracted her disability by "continuous" exposure to such materials for a period of approximately seven months prior to June 20, 1945, which commenced more than three months before the effective date of the policy sued on. Plaintiff states that Mary Moore did not allege in her complaint continuous exposure to radioactive substances during the seven-month period, but merely that she was in the employ of Radium Industries, Inc. for that period of time, and that it appears from her complaint that the injuries sustained did not manifest themselves until about June 20, 1945, which was well within the period of coverage provided by the policy. It will be observed that paragraph 6 of her complaint states that during the seven months ending on or about June 20, 1945, she was continuously an employee of Radium Industries, Inc., and was work-

ing in and about the manufacture of the ointment. We are of the opinion that paragraph 8 of her complaint, in alleging that in consequence of such continued exposure her hands and other parts of her body were affected by the radioactive emanations and became diseased and afflicted with radium poisoning, refers to the period of time mentioned in paragraph 6, and that the other paragraphs of her complaint, including paragraph 18, plead that the disability from which she suffered and for which she claimed damages arose during the period mentioned in paragraph 6. The provision limiting liability to accidents occurring during the policy period is clearly inconsistent with the thought that continuous exposure over a period of seven months, in part before the effective date of the policy, is to be regarded as an accident.

Defendant urges that the "products exclusion endorsement" relieved it of liability of duty to defend Mary Moore's case. It is unnecessary to consider this point.

The rule of "liberal construction" in favor of the insured does not apply in the instant case because the applicable provisions of the policy are not ambiguous. Contracts of insurance are to be construed like other contracts. If ambiguous terms are used, the meaning more favorable to the insured will be adopted, not because he is the sufferer in a recent loss or because of a disparity in the financial condition of the two parties, but because the words are those of the insurer and the ambiguity is chargeable to it. Where, however, there is no ambiguity in the terms, neither party is to be favored. The rule that ambiguous language is to be construed most strongly against the insurer, does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. *Norwaysz v. Thuringia Ins.*

*Co.,* 204 Ill. 334; *Crosse v. Supreme Lodge Knights & Ladies of Honor,* 254 Ill. 80; *Pioneer Life Ins. Co. v. Alliance Life Ins. Co.,* 374 Ill. 576.

We are of the opinion that the case was correctly decided. Therefore, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

LEWE and KILEY, JJ., concur.