Wilson *v.* Maryland Casualty Company, Appellant.

Argued November 23, 1953; reargued April 20, 1954. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Robert C. Kitchen*, with him *Richard A. Smith*, for appellant.

*Foster A. Dunlap*, with him *Philip S. Polis*, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 4, 1954:

The question is whether there was any duty on the part of the defendant, Maryland Casualty Company, to defend an action for damages brought by one John A. Lees against the plaintiff, John Wilson, who was insured by the Company against liability for accidents.

In the Company's policy it agreed "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages . . . because of bodily injury, sickness or disease, . . . sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined." By another clause of the policy it was provided that "Assault and battery shall be deemed an accident *unless committed by or at the direction of the insured*." [1] The policy further provided that *"As respects such insurance as is afforded by the other terms of this policy* the company shall (a) defend in his name and behalf any

---

[1] Of course a person *could not* contract for indemnity against liability for damage or injury caused by his own wilful act, much less an assault and battery committed by him. A contract to insure against such liability would obviously be void as being in violation of public policy.

suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . ." In other words, *the obligation to defend suits against the insured extended only to where insurance against liability was covered by the terms of the policy.*

Wilson operated a restaurant and taproom. An action in trespass was brought against him by one John A. Lees, and Wilson called upon the Casualty Company to defend it. The Company refused so to do, whereupon Wilson settled the case and then brought action against the Company to recover the amount of the settlement which he had made, $750. Preliminary objections to his complaint were overruled by the court and the Company was directed to file an answer; upon its failure to do so judgment was entered in favor of Wilson. The Superior Court affirmed the judgment and we allowed this appeal.

Wilson's complaint against the Casualty Company set forth that on or about the 28th day of January, 1951, "an altercation took place among the patrons of Plaintiff's restaurant and bar with the result that certain accidental injuries were alleged to have been sustained by John A. Lees"; that Lees instituted an action in trespass against the plaintiff to recover damages allegedly sustained by Lees due to the aforesaid injuries. Had the complaint stopped there it might well be that the Company would have been obliged to defend the action because of the averment that accidental injuries were alleged to have been sustained by Lees. But the complaint had attached to it a "true and correct copy" of Lees' complaint in the action brought by him against Wilson in which it appeared that Lees did *not* sue for accidental injuries but, on the contrary, his complaint declared that "On January

28, 1951, while the said plaintiff was lawfully in defendant's taproom . . . the defendant [Wilson] then and there unlawfully set upon and with great force and violence assaulted the plaintiff [Lees] with a certain blackjack and struck the said plaintiff on the head with said blackjack. As a result of said assault and battery, the plaintiff suffered injuries to his head . . . Said conduct of defendant was unlawful, wanton and malicious." Indeed, to emphasize the fact that Lees' claim was not based on any theory of accident or negligence but on the commission of a wilful tort,— indeed of a crime—the complaint added that he, Lees, was "entitled to exemplary and punitive as well as compensatory damages from defendant." Since, therefore, insurance against liability on such a claim was expressly excluded from the coverage of the policy,[2] the Company, by reason of the provision that it was obliged to defend only those suits as to which the policy insured against liability, properly disclaimed obligation to defend the Lees suit.

Plaintiff presents the curious argument that merely because he asserted that Lees' charge that he had committed assault and battery upon him was groundless, therefore the Company was obliged to defend the action. If that contention were correct the Company would be obliged to defend any and every action brought against its insured, no matter what its nature, if informed by the insured that the claim was false or if it was in fact false, even though liability in re-

---

[2] In *Vaksman v. Zurich General Accident & Liability Insurance Co., Ltd.*, 172 Pa. Superior Ct. 588, 590, 94 A. 2d 186, 187, 188, it was said: "There is a clear distinction between *accidental* and *intentional* injuries or damage", a distinction that was also pointed out in the cases there cited, namely: *Hamilton v. American Indemnity Co.*, 82 Pa. Superior Ct. 191, 194, 195, and *Kraftsow v. Brown*, 172 Pa. Superior Ct. 581, 585, 586, 94 A. 2d 183, 185.

spect to it was not insured by the terms of the policy. It is obvious that the Company's obligation was not to defend all suits and claims whatsoever merely because they were groundless, but to defend all suits and claims *covered by the policy whether or not* they were groundless.[3] In other words, a cause of action was *not* insured *because* of its being false, but *was* insured *if covered by the policy, whether or not it was false.* The question is not as to the truth or falsity of a claim, but whether it is covered by the policy; if it is, the Company must defend it; if it is not, its truth or falsity is wholly immaterial.

In *Fullmer v. Farm Bureau Mutual Automobile Insurance Co.,* 350 Pa. 451, 452, 39 A. 2d 623, it was said: "It is scarcely more than a legal platitude to say that in a suit on an insurance policy the primary requisite for recovery is proof by the plaintiff that the *claim* comes within the general coverage of the policy."

In *West Philadelphia Stock Yard Co. v. Maryland Casualty Co.,* 100 Pa. Superior Ct. 459, 462, it was said that it was "the nature of plaintiff's *claim* against the stock company [the insured] which determined whether the company [the casualty insurance company] was required to defend", but if the *claim* came within the scope of the policy the company was obliged to defend even though the claim might be wholly groundless, false or fraudulent.

---

[3] In *United Waste Mfg. Co. v. Maryland Casualty Co.,* 148 N.Y.S. 852, 858, the court said, with respect to a suit not covered by the policy but alleged to be false and groundless: "The defendant was not obliged to defend an action which was excepted in terms by the policy. . . . that requirement [to defend an action whether true or false] did not, and could not, call upon the defendant to defend an action for which under the terms of the policy it was not liable. That is not what is meant by the provision with reference to defending suits even if groundless."

In *Springfield Township v. Indemnity Insurance Co. of North America,* 361 Pa. 461, 464, 64 A. 2d 761, 762, it was again stated that it is "the nature of the *claim* which determines whether the insurer is required to defend."

In *Knorr v. Commercial Casualty Insurance Co.,* 171 Pa. Superior Ct. 488, 90 A. 2d 387, an insurance policy expressly provided that it did not apply to the rendering of any professional services by any person. A claim was instituted against the insured by the patron of a beauty shop for injury sustained by a mechanical hair dryer striking her on the head. The company denied liability to defend the action and its position was upheld by the court on the ground that it was not obliged to defend a suit on a *claim* which was not within the terms of the policy.

The case of *University Club v. American Mutual Liability Insurance Co. of Boston,* 124 Pa. Superior Ct. 480, 189 A. 534, relied upon by the plaintiff, is not in point. The policy issued in that case was to indemnify the insured against liability for damages on account of injuries to the insured's employes who were legally employed. A claim was made against the insured for damages by reason of personal injury sustained by one of the employes, it being incidentally stated in the complaint that the injured employe was 17 years of age. Judge KELLER pointed out that the plaintiffs in that action "based their right of recovery on the defective condition of the elevator, and did not aver, or specifically rely on, any illegal employment of the minor plaintiff." Accordingly it was held that the insurance company was not justified in refusing to defend the suit since, it being shown, without any change thereby in the cause of action stated in the complaint, that the employe was in fact 18 years old, the action was brought within the scope of the policy.

In the present case the cause of action against the insured, being for wilful assault and battery committed by him, could *not* be changed by amendment into a totally different cause of action based on negligence so as to bring it within the terms of the policy.

There is no authority in any jurisdiction whatever to support plaintiff's position. On the contrary, the rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action, and that the company is not required to defend if it would not be bound to indemnify the insured even though the claim against him should prevail in that action: *Fessenden School, Inc. v. American Mutual Liability Insurance Co.,* 289 Mass. 124, 193 N. E. 558, citing a host of authorities from Virginia, Tennessee, Ohio, Mississippi, Texas and Kentucky.

In *Lee v. Aetna Casualty & Surety Co.,* 178 F. 2d 750, 751, Judge LEARNED HAND said: "This language [which was identical with that in the present policy] means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; *it is the claim which determines the insurer's duty to defend; . . . ."*

In *U. S. Fidelity & Guaranty Co. v. Baldwin Motor Co.,* 34 S. W. 2d 815, 819 (Texas), the court said: "Tested by such averments, [in the complaint against the insured] the insurance company could not be called upon to defend a petition which *upon its face* alleged a state of facts not covered, but excluded, by the policy."

In *Lamb v. Belt Casualty Co.,* 3 Cal. App. (2d) 624, 630, 40 P. 2d 311, 314, it was said that, to determine whether the insurance company was obliged to defend an action brought against the insured, "The lan-

guage of its contract [the policy] must first be looked to, and next, *the allegations of the complaint . . .* for damages against the insured."

In *Ocean Accident and Guarantee Corporation, Ltd. v. Washington Brick & Terra Cotta Co.,* 148 Va. 829, 139 S. E. 513, it was held that the insurance company was under no obligation to defend an action against the insured if it would not be liable under its policy for any recovery that might be had therein.

In *Brodek v. Indemnity Insurance Co. of North America,* 292 Ill. App. 363, 384, 11 N.E. 2d 228, 237, the court said: "Defendant contends for the rule that if the insurance carrier would be required to pay a judgment or indemnify the insured in the event the plaintiff prevailed, then it must defend, otherwise it need not defend, and we believe *this rule is sustained by the great weight of authority.*"

Among numerous cases holding to the same effect as the others thus referred to, may be cited: *Morgan v. New York Casualty Co.,* 54 Ga. App. 620, 188 S.E. 581; *Isaacson Iron Works v. Ocean Accident and Guarantee Corporation Ltd.,* 191 Wash. 221, 70 Pac. 2d 1026; *Commercial Standard Ins. Co. v. McKinney,* 114 S.W. 2d 338 (Texas Civ. App.); *United Waste Mfg. Co. v. Maryland Casualty Co.,* 148 N.Y.S. 852.

The judgment is reversed and here entered for defendant.

---

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

It is my view that the judgment of the Superior Court should be affirmed. It is a basic principle of law requiring no citation of authority that preliminary

objections in the nature of a demurrer admit all facts in the complaint properly pleaded.

Plaintiff, the insured, was the owner of a restaurant, bar and rooming house. Defendant, an insurance company, issued to plaintiff its policy of insurance, insuring him from liability for damages "sustained by any person or persons, caused by accident . . ." and agreed to *defend in [plaintiff's] name and behalf any suit against the insured alleging such injury, . . . even if such suit is groundless, false or fraudulent. . . ."* By the terms of the policy assault and battery was to be deemed an accident *"unless committed by or at the direction of the insured."* The complaint averred ". . . an altercation took place 'among the patrons' of Plaintiff's restaurant and bar . . ." wherein one, John A. Lees, was injured. Lees sued the plaintiff and ". . . averred that Plaintiff herein committed an assault and battery upon [him]." Plaintiff, in his *present* complaint, averred, as above recited, *that the injury inflicted upon Lees occurred in an altercation among the "patrons" and that Lees in his complaint "falsely" averred that plaintiff committed an assault and battery upon him.* A copy of the Lees complaint was attached to said plaintiff's complaint.

The court below, affirmed by the unanimous opinion of the Superior Court, in my judgment, correctly held that since defendant *admitted* by preliminary objections in the nature of a demurrer that the assault and battery had been committed by *"patrons"* of plaintiff and *not* by the plaintiff, and that Lees *falsely* claimed plaintiff assaulted him, the defendant insurance company was required, under its policy, to *defend* the suit and upon its failure so to do, plaintiff was entitled to compromise the suit so instituted against him by Lees: *Roberts v. Fireman's Insurance Company of Newark, New Jersey,* 376 Pa. 99, 101 A. 2d

747. Despite the averment that the statement in Lees' suit against the plaintiff was false, the insurance company chooses to rely upon the truth of Lees' averments in *his* complaint and apparently disbelieves its insured's statements, but which at the same time it *admits* by filing preliminary objections. Had defendant desired to test the question of *liability* it should have filed an answer to plaintiff's complaint as directed by the court when the preliminary objections were dismissed.

The judgment of the Superior Court should be affirmed for an additional reason. The judgment here is *by default.* The docket entries show that on December 16, 1952, defendant's preliminary objections were dismissed and defendant was "directed to file an Answer within 20 days." No answer was filed and on January 8, 1953, judgment for plaintiff was entered against defendant *"for failure to file an answer within the required time"* and damages were assessed. A default judgment operates as an admission by the defendant of the truth of all facts well pleaded: 49 C. J. S. Judgments sec. 201, and the numerous cases from many jurisdictions cited therein. *McFarland-Meade Co. v. Doak,* 63 Pa. Superior Ct. 27, is not in conflict with this principle. A default judgment did not grant plaintiff a right to recover *in replevin* where, under the admitted facts, replevin did not lie.

I cannot profitably add to the excellent opinion of the court below and the unanimous opinion of the Superior Court. The opinion of the late President Judge KELLER in *University Club v. American Mutual Liability Insurance Company of Boston,* 124 Pa. Superior Ct. 480, 189 A. 534, is in complete accord with this opinion. For these reasons I dissent.

Mr. Justice JONES joins in this dissent.

598

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

John Wilson, co-owner of a restaurant, bar and rooming house in Philadelphia, apparently realizing that untoward incidents could occur in his place of business, contracted with the Maryland Casualty Company for indemnity in the event he should be sued as the result of occurrences arising in his establishment. Upon receipt of certain premiums the Maryland Casualty Company agreed to hold Wilson harmless in all legal actions arising out of accident even if such suits should be "groundless, false or fraudulent."

Human nature being what it is and alcohol being what it is, both parties realized that possible altercations in Wilson's place of business could take on the aspect of ardent belligerencies which could result in assaults and batteries. In full realization of these possibilities, the insurance company agreed to indemnify Wilson even where assault and battery was involved. The pertinent reference in the policy read: "Assault and battery shall be deemed an accident. . ." This interpretation was modified by the proviso ". . . unless committed by or at the direction of the insured."

On January 28, 1951, a John A. Lees, while a patron in Wilson's taproom, sustained certain injuries which he claimed were caused by Wilson's hitting him with a blackjack. Wilson denied that he had struck Lees and asserted that Lees' injuries were the result of an accident. When Lees then entered a suit against Wilson, Wilson called on the Maryland Casualty Company to defend him, but the company refused to undertake the defense. Deliberating on the alternatives of going to court, with all the concomitant notoriety accompanying such a trial regardless of outcome (and its consequent bad effect on his business) and paying Lees money even though he was not, from Wilson's point of view, entitled to any money, Wilson

settled Lees' claim for $750. Wilson then asked the insurance company to reimburse him for the amount he had to pay Lees, but this request also fell on deaf ears.

Wilson now brought suit against the insurance company, declaring under oath that he had not committed an assault and battery on Lees and that Lees' injuries were the result of an accident. The insurance company resisted recovery on the ground that Lees had told the truth and Wilson had told an untruth. And the Majority of this Court has affirmed the insurance company's position.

This leads me to inquire: Since when, in our system of jurisprudence, has a litigant been allowed to act as judge and jury? The Maryland Casualty Company is a defendant in a suit brought against it by John Wilson. It replies with the dogmatic conclusion that Wilson struck Lees. How does the insurance company know that Wilson struck Lees? It was not present, through any officer or agent, in the taproom when the incident of January 28, 1951, occurred. On what possible basis can it assert that Wilson was at fault on January 28, 1951, and Lees was without fault?

It is to me an amazing thing that an insurance company, being sued on a contract of insurance, can summarily escape liability by simply asserting, through hearsay, that the insured is lying.

In its Opinion the Majority quoted the exclusionary clause in the insurance contract but did not stop to analyze it. Let me repeat that clause: "Assault and battery shall be deemed an accident unless committed by or at the direction of the insured." *Unless committed by or at the direction of the insured* is as categorical a statement as can be made. *Committed by* means *actually* committed by, not assertedly committed by,

not hearsayedly committed by. Where is the adjudication in a criminal court, civil law court, equity, arbitration proceedings, or in any other tribunal which proclaims that Wilson committed an assault and battery? The only verdict that Wilson committed an assault and battery comes from one of the officials of a party litigant. And since when does the desk of a litigant substitute for the jury box or the judge's bench?

In the present state of these proceedings Wilson is not pressing this Court to decide he is entitled to $750. He is only asking that he be given an opportunity to prove before a jury that Lees' injuries were the result of an accident and that therefore, under the contract for which he paid premiums, he is entitled to reimbursement for what he was unjustly required to pay Lees. Is this asking too much? Despite all the cases cited in the Majority Opinion, I fail to find one principle of law quoted which declares that where a strict question of fact is involved a litigant may not have that question decided by a jury.

The Majority Opinion quotes from Wilson's Complaint in which he says that "an altercation took place among the patrons of Plaintiff's restaurant and bar with the result that certain accidental injuries were alleged to have been sustained by John A. Lees . . . ," and that Lees instituted an action in trespass against Wilson to recover damages on account of the injuries Lees sustained. The Majority Opinion then makes the following startling observation: "Had the complaint stopped there it might well be that the Company would have been obliged to defend the action because of the averment that accidental injuries were alleged to have been sustained by Lees." The Majority Opinion, however, then adds that since Wilson did not stop there and attached a copy of Lees' Complaint in which Lees charged assault and battery committed by Wil-

son, Wilson thus took himself out of Court. In other words, if Wilson had been less than honest and had said nothing about Lees' Complaint then the Insurance Company would have been required to defend him. However, since Wilson told the whole truth the insurance company was then entitled to deny all responsibility and, upon this mere naked *denial*, refuse to pay the sums of money it had contracted to pay under its contract!

The Majority says that Wilson "presents the curious argument that merely because he asserted that Lees' charge that he had committed assault and battery upon him was groundless, therefore the Company was obliged to defend the action." I would say, in this respect, that this observation on the part of the Majority is more curious than the curiosity it attached to Wilson's position. If, in fact, Lees told an untruth, how else would Wilson assert that untruth except to say that the charge of assault and battery was groundless?

The Majority then goes on to say that if Wilson's "contention were correct the Company would be obliged to defend any and every action brought against its insured, no matter what its nature, if informed by the insured that the claim was false or if it was in fact false, even though liability in respect to it was not insured by the terms of the policy." This observation on the part of the Majority is even more curious than its preceding one. And the answer to it is: of course, the company is required to defend in every action brought against its insured which comes within the provisions of the contract. The great fallacy in the whole Majority Opinion is that it fails to distinguish between what *is* actually outside the contract and what the insurance company *says* is outside the contract. Certainly the insurance company is only re-

quired, as the Majority properly says, to defend such claims as are covered by the policy. But who is to determine whether claims are or are not *covered by the policy*? The insurance company? Is the insurance company to be the sole arbiter of its own obligations? The contract specifically says, as heretofore quoted, that "assault and battery shall be deemed an accident unless committed by or at the direction of the insured." This proviso does not say, as the Majority apparently seems to think it says, "Assault and battery shall be deemed an accident unless, *in the company's opinion,* committed by or at the direction of the insured."

The Majority Opinion quotes from the case of *Fullmer v. Farm Bureau Mutual Automobile Insurance Co.,* 350 Pa. 451, in which Mr. Justice STERN (now Chief Justice) said: "It is scarcely more than a legal platitude to say that in a suit on an insurance policy the primary requisite for recovery is proof by the plaintiff that the *claim* comes within the general coverage of the policy." It will be noted that the quotation says that primary requisite for recovery is *proof* that the claim comes within the coverage of the policy. In that case there was actually a trial and the plaintiffs were given an opportunity to show that their claim *did* come within the provisions of the contract entered into between the insurance company and the insured (the defendant in the original trespass suit). But in the case at bar there was no trial. Wilson was not given an opportunity to supply *proof* that his case comes within the provisions of the contract he has with the Maryland Casualty Co. If he were allowed what the plaintiffs were allowed in the *Fullmer* case, he would have no right to complain, and I would not be writing this dissent.

The same principle was involved in *Springfield Township v. Indemnity Insurance Co. of North America,* 361 Pa. 461, also cited by the Majority as authority. It quotes from the Opinion written by Justice PATTERSON that it is "the nature of the *claim* which determines whether the insurer is required to defend." But in that case there had also been a *trial,* and in the trial it was demonstrated that the plaintiff's *proofs* did come within the provisions of the liability policy.

The Majority in its Opinion uses the word "claim" synonymously with Complaint, but as revealed in the *Springfield Township* case and the *Fullmer* case the word *claim* is employed in its over-all generic sense to cover everything that the plaintiff advances as proof at the trial. Again I repeat that Wilson has not been given a chance to show what his *claim* is. His claim is not what is contained in Lees' Complaint. His claim consists of what he contends he can prove at the trial.

The Majority makes the same mistake of confusing *claim* with *Complaint* in the case of *Knorr v. Commercial Casualty Insurance Co.,* 171 Pa. Superior Ct. 488. There again there was a trial and there again it was the plaintiff's *proofs* that failed, and not his Complaint or Statement of Claim.

The Majority makes the astounding statement: "There is no authority in any jurisdiction whatever to support plaintiff's position." The very case of *West Philadelphia Stock Yard Co. v. Maryland Casualty Co.,* 100 Pa. Superior Ct. 459, quoted by the Majority, is one authority in our own jurisdiction for the plaintiff's position. There the plaintiff stock yard company was sued by two persons who had been injured by steers that had escaped from a motor vehicle which had transported the steers. The stock yard company called on the Maryland Casualty Company (evidently

the same company involved in the case at bar) to defend the suits brought against it. The insurance company refused. The stock yard company then defended on its own and won the suits. It then brought an action against the Insurance Company to recover the expenses incurred in defending the lawsuits. The insurance company replied that it was not liable because the injuries caused by the steers were not covered by the policy which excluded automobile operations, the clause in question reading: " 'This agreement does not cover any accident directly or indirectly caused by any automobile, vehicle or by any draught or driving animal or vehicle owned or used by the assured, or by any employee of the assured in charge of such or any such vehicle or animal, unless such accident occurs upon premises owned by or under the control of the assured, or on the public ways immediately adjacent thereto, etc.' " Under the theory advanced by the Majority here, this exclusionary clause would have ended the case for the stock yard company since the insurance company stated that the accident occurred in a manner not covered by the policy. But the Superior Court held otherwise. In affirming the verdict obtained by the stock yard company in the court below, the Superior Court said: "It is very evident that the escape of a steer in the process of unloading is not an 'automobile accident' in common parlance, and we are not called upon to give the term a broad meaning in order to allow the company to escape liability."

The Majority says that "the rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action, and that the company is not required to defend if it would not be bound to indemnify the insured even though the claim against him should

prevail in that action." The fault here lies in the fact that the Majority does not distinguish between Complaint in the action brought by the *injured person* against the *insured* and the Complaint brought by the *insured* against the *insurance company*. It is the Complaint or Claim of the insured against the insurance company which is the criterion of liability; not the Claim by the victim of the accident against the insured. If the Majority had made this distinction it would not have fallen into the grievous error it has committed by the decision in this case. The Complaint or claim of John Wilson *does* come within the provisions of the insurance policy.

The faulty logic running through the whole Majority Opinion is demonstrated no less vividly in the footnote on page 1 which says: "Of course a person *could not* contract for indemnity against liability for damage or injury caused by his own wilful act, much less an assault and battery committed by him. A contract to insure against such liability would obviously be void as being in violation of public policy." This again assumes that Wilson *did* commit an assault and battery just because Lees asserts he did. Wilson denies he committed assault and battery and this Court has refused him an opportunity to prove that denial.

I believe that this decision of the Majority will work havoc in the whole insurance law of the Commonwealth, it will impair the obligation of insurance contracts and it will work great injustices in the field of indemnification.

I accordingly vigorously dissent.