## Gene's Restaurant v. Nationwide Insurance Co.

*Anthony Sciolla,* for plaintiff.
*Robert Keller,* for defendant.

LORD, *J.,* January 10, 1986—This matter arose as a result of a lawsuit brought by Patricia Ashenback and her husband against Gene's Restaurant, plaintiff in the present action, for injuries sustained at Gene's on January 6, 1976. The Ashenback complaint consisted of two counts, one by Mrs. Ashenback and one by her husband. Both counts alleged willful and wanton misconduct by Gene's. There was no allegation of negligence.

Gene's contacted its liability insurance carrier, Nationwide Insurance Co., defendant in the present case, to undertake defense of a lawsuit and

promptly sent a copy of the Ashenback complaint to Nationwide. Nationwide investigated the claim.

Nationwide notified Gene's in writing that it would not defend the suit. Nationwide's decision was based on the fact that the Ashenback complaint consisted of allegations of intentional misconduct which were not covered under the policy. Gene's retained its own counsel and successfully defended the action.

The present lawsuit was brought by Gene's against Nationwide for costs and attorney's fees incurred in the prior litigation on the theory that Nationwide breached its duty to defend.

The issue for decision here is whether an insurance company may base its decision to defend a claim solely on the allegations in the complaint against its insured. Plaintiff's first argument is that regardless of the allegations in the Ashenback complaint, if an insurance company knows, or should reasonably know, that a claim may potentially come within its policy, then it has a duty to defend the claim.

In support of this argument, plaintiff cites *Zeitz v. Zurich General Accident Liability Insurance Company*, 165 Pa. Super. 295, 67 A.2d 742 (1949). *Zeitz* however, presents a dissimilar situation to the instant case and does not answer the specific issue before the court.

In *Zeitz*, plaintiff, a bakery, held a standard workers' compensation and liability insurance policy with defendant, Zurich Insurance Co. An illegally employed minor was injured while working at the bakery. He applied for and received benefits pursuant to plaintiff's workers' compensation policy in accordance with Pennsylvania law. Thereafter, the minor's parents, on behalf of the minor, sued the bakery for the minor's injuries despite having re-

ceived full compensation.

The bakery relied on its employers' liability policy and asked Zurich to defend the suit. Zurich refused on the basis that the policy specifically excluded coverage for illegally employed persons under section 1(b) of the policy. Plaintiff argued that irrespective of whether the minor could recover, Zurich had a duty to defend.

The court examined the policy and found for plaintiff. As to defendant's argument, the court noted that if section 1(b) were applicable in this case, then illegally employed minors would certainly be excluded. However, the court said section 1(b) is effective only in jurisdictions which, unlike Pennsylvania, do not provide workers' compensation benefits to the illegally employed, but leave them to their common law remedies. Hence, section 1(b) disappears from consideration. 165 Pa. Super. at 300.

The court then proceeded to break down the applicable provisions of the policy into two categories: the insuring clause and the defense clause. The court held that the applicable provision of the insuring clause would be section 1(a) and the provisions dealing with the Pennsylvania Workmen's Compensation Act. The court said the defense clause would be found at section 3.[1] The two clauses read together offer no limitation to, but rather, illustrate a bargained-for promise to defend this action regardless of whether the minor had a right of recovery. Id. at 301, 302.

Unlike the *Zeitz* case, in the instant situation, the insurance policy did specifically exclude the claims

---

1. Section 3 of the policy provided in pertinent part: "will defend — . . . any suit or other proceeding . . . although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent." 165 Pa. Super. at 301.

alleged in the complaint against its insured. Furthermore, the *Zeitz* case did not answer the paramount question at hand: whether the insurer may base its decision to defend a claim solely on the allegations in the original complaint.

*Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304 (1954), the principal case relied upon by defendant, is responsive to the present issue. Factually, complainants brought suit against plaintiff, the Wilson Tap Room, to recover for bodily injuries sustained in an altercation within the Tap Room. As in the present case, the complaint alleged intentional tort. Specifically, the complaint alleged assault and battery by plaintiffs. The Wilsons sought defense of the claim from their liability carrier, defendant, Maryland Casualty.

After review of the complaint, Maryland declined to defend and declared that its policy did not cover claims for "assault and battery committed by or at the direction of the insured." 377 Pa. at p. 589. Thereafter, the Wilsons retained their own counsel and defended the lawsuit. Plaintiffs then brought an action against Maryland for costs incurred in defending the suit.

The court held that when an insurance company is presented with the question whether or not to defend an action brought against its insured, it need look no further than the complaint against its insured. If the allegations in the complaint do not, potentially, come within the existing policy, the insurance company may properly refuse to defend the action. Id. at 594.

In the instant case, because the allegations in the Ashenback complaint express intentional misconduct by plaintiffs, which are not covered under the policy, Nationwide had no duty to defend at that point.

Plaintiff's second argument is that, even assuming the insurance company's duty to defend rests with allegations in the complaint, in the instant case, those allegations were not expressly excluded in the Nationwide policy. Therefore, the claims were within the policy's coverage and should have been defended. This argument also must fail.

The insuring clause of the Nationwide policy issued to plaintiff provided:

"(1) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damages to which the insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damage on account of *such bodily injury* or property damage, even if the allegations of the suit are groundless, false or fraudulent. . . ." (emphasis added).

The critical word in the foregoing clause is "occurrence" which is defined on page two of the policy:

" 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*" (emphasis added).

Hence, there is no question that Nationwide expressly excluded intentional misconduct from its coverage.

Of further relevance to the above-cited policy provisions is that courts have held that it is critical to a determination of an insurer's duty to defend that the

insurance policy's defense clause is compared to its insuring or coverage clause. The *Zeitz* court found the insurer's duty to defend and its duty to insure to be mutually independent because there was nothing in the policy to suggest that one duty was contingent upon the other. In the *Wilson* case, conversely, the court found that the insurer's duty to defend was directly dependent upon its duty to insure. The *Wilson* court's conclusion was based on the fact that the defense clause of the policy began by stating that it would defend those claims for which it promised to provide coverage under the insuring clause.

The instant case is controlled by *Wilson*. The previously cited clause of the Nationwide policy begins by articulating the type of injury claims for which it will provide coverage. Then, in the latter part of the provision, Nationwide promises "to defend any suit against the insured seeking damages on account of *such . . . injury. . . .*" (emphasis added). In other words, Nationwide has promised to defend those claims for injuries which come within its insuring clause. As in *Wilson,* the two promises are co-extensive.

Plaintiff's last argument is that Nationwide had a duty to defend, even if, as expressed in the above-cited defense clause, the suit was "groundless, false or fraudulent." Plaintiff suggests that Nationwide knew that the Ashenback lawsuit was fraudulent, and that knowledge was the basis of their refusal.

However, Nationwide has never denied that it has a clear duty to defend suits which are "groundless, false or fraudulent," when the allegations in the complaint potentially come within the insuring clause of its policy. Here, Nationwide did not decline to defend because of the falseness of the claims but, rather, because the allegations pleaded

did not come within its policy, regardless of their truth or falsity. Nationwide acted properly in refusing to defend this action.

## ORDER

And now, this January 10, 1986, a verdict is entered in favor of defendant, Nationwide Insurance Co.