J-A29028-18

2019 PA Super 90

| | | |
|---|---|---|
| MARGARET M. KIELY, ATTORNEY-IN-FACT, ON BEHALF OF CHRISTINE FEINSTEIN, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : | |
| | : | No. 1957 EDA 2018 |
| PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY | : : : | |

Appeal from the Order Entered June 22, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): December Term, 2016 No. 003446

BEFORE: OTT, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY DUBOW, J.:                                    **FILED MARCH 26, 2019**

In this declaratory judgment action, Appellant Margaret M. Kiely, attorney-in-fact on behalf of Christine Feinstein, alleged that Appellee, Philadelphia Contributionship Insurance Company (PCIC), improperly and in bad faith denied Feinstein a defense in an underlying litigation. Following a trial, the court entered a nonsuit in favor of PCIC. Appellant now appeals from the Order entered June 22, 2018, denying her Post-Trial Motion to remove the nonsuit. We affirm.

_Underlying Litigation_

In July 2015, Appellant negotiated an oral employment contract for home aid services on behalf of Feinstein with Nydia Parkin. Upon agreeing to terms, Parkin commenced employment. In February 2016, however,

_____

* Former Justice specially assigned to the Superior Court.

Feinstein allegedly attacked Parkin, causing injuries. Thereafter, Appellant terminated Parkin's employment.

In May 2016, Parkin commenced litigation. Parkin filed a complaint in five counts: asserting Assault and Battery, Intentional Infliction of Emotional Distress (IIED), Breach of Contract, False Imprisonment, and Punitive Damages. **See** Complaint, 12/30/16, Exh. C (**Parkin v. Feinstein**, Montg. Cty. Ct. of Common Pleas, Dkt. No. 2016-10061, 5/19/16 (Underlying Complaint)).

*Insurance Coverage*

At the time of the alleged assault, Feinstein maintained two insurance policies with PCIC: a Homeowner's Insurance Policy and an Umbrella Policy. **See** Complaint, Exh. A (PCIC Policy No. HO00015503 (Homeowner's Policy)), Exh. B (PCIC Policy No. PE1060 (Umbrella Policy)).

In relevant part, the Homeowner's Policy provided coverage for personal liability arising from bodily injury caused by an "occurrence." Homeowner's Policy, Form HO 00 03 05 01, "Section II – Liability Coverages," at 16. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions[.]" **Id.**, "Definitions," at 2. There were also exclusions limiting the coverage provided by the Homeowner's Policy. For example, the policy excluded coverage for an expected or intended injury. **See id.**, "Section II – Exclusions," at 18.

The Umbrella Policy extended coverage beyond the limits provided by the Homeowner's Policy for liability arising from bodily injury.[1]  In addition, the Umbrella Policy provided coverage for liability arising from certain personal injuries.  Umbrella Policy, Form DL 98 01 06 98, "II. Coverages," at 2.  In relevant part, the Umbrella Policy defined "personal injury" to include "injury arising out of . . . [f]alse arrest, detention or imprisonment[.]"  *Id.*, "I. Definitions," at 2.[2]  As with the Homeowner's Policy, the Umbrella Policy excluded coverage for an expected or intended injury, and it further excluded coverage for a personal injury "[s]ustained by any person as a result of an offense directly or indirectly related to the employment of this person by the insured[.]"  *Id.*, "III. Exclusions," at 3.

Subject to certain distinctions not relevant here, both policies provided that if a suit was brought against the insured, to which the policy applied, PCIC would provide a defense to that suit.  *See* Homeowner's Policy, Form HO 00 03 05 01, "Section II – Liability Coverages," at 16; Umbrella Policy, Form DL 98 01 06 98, "II. Coverages," at 2.

*Current Litigation*

Following its review of the allegations set forth in the Underlying Complaint, PCIC refused to provide Feinstein with a defense.  *See* PCIC Motion

---

[1] The Homeowner's Policy provided $500,000 in coverage for personal liability, and the Umbrella Policy provided an additional $1,000,000.  Homeowner's Policy, Declarations, at 1 (unpaginated); Umbrella Policy, Declarations, at 1.

[2] By definition, there was no bodily injury component to these personal injuries.  *See id.*  Thus, this was a distinct category of coverage.

for Summary Judgment, Exh. C (Letter, dated 8/1/16 (Initial Denial Letter) (denying coverage under Homeowner's Policy)), Exh. D (Letter, dated 11/28/16 (Comprehensive Denial Letter) (explaining coverage denial under Homeowner's Policy and Umbrella Policy)).  According to PCIC, Parkin's allegations either did not trigger coverage under the policies or, alternatively, were subject to certain policy coverage exclusions.  *See* Comprehensive Denial Letter at 2-7 (unpaginated).

In December 2016, Appellant commenced this litigation, seeking declaratory judgment and further asserting breach of contract and bad faith. PCIC filed an Answer and Counterclaim for declaratory judgment.

The parties proceeded to discovery.  Appellant's claim of damages principally included attorney's fees incurred when PCIC declined to provide Feinstein with a defense in the underlying litigation.  However, Appellant refused to produce timely documentation supporting her claim for attorney's fees.  Following protracted motions practice, the trial court eventually issued a Sanctions Order, precluding Appellant from "offering evidence regarding alleged attorney's fees as damages for failure to comply with two (2) prior court orders requiring production of same."  Sanctions Order, 1/11/18.

Both parties filed Motions for Summary Judgment, which were denied by the trial court because it determined that genuine issues of material fact remained in dispute.  Order, 12/6/17; Order, 12/21/17.  The Orders do not identify what issues of fact remained.

- 4 -

In May 2018, a trial commenced. Appellant framed the issue before the court as whether PCIC did an investigation to determine whether Feinstein had "the mental capacity . . . to intentionally injure the claimant." N.T. Trial, 5/24/18, at 7. In contrast, PCIC suggested that the court must determine whether the alleged assault constituted an "occurrence" as defined by the policies, *i.e.*, whether the incident was an accident that triggered policy coverage. *Id.* at 16-17.

Appellant was the sole witness to testify. According to Appellant, Feinstein had a stroke in 2015 and suffered from bipolar disorder. N.T. Trial at 41, 43.[3] Appellant acknowledged that, on the day of the alleged incident, she requested that Feinstein be held involuntarily at a hospital, but after a psychiatric examination, Feinstein was released. *Id.* at 85. Thereafter, Feinstein continued to live on her own. *Id.* at 84-85. Further, Appellant acknowledged that Feinstein had never been declared incompetent. *Id.*

Following Appellant's presentation of evidence, PCIC moved for a compulsory nonsuit. *Id.* at 98. According to PCIC, Appellant failed to establish that Feinstein had such diminished mental capacity that she could not appreciate the nature of her actions, and therefore, there was no coverage. *Id.* at 99, *see also* N.T. Trial at 114-16 (clarifying PCIC's position

---

[3] Appellant also suggested that Feinstein was diagnosed with dementia in September or October 2016, some six to eight months after the alleged assault and after PCIC denied her claim. *Id.* at 42-43. Appellant offered no medical testimony to support these diagnoses.

that the alleged assault did not constitute an occurrence). The trial court agreed and granted the nonsuit.

Appellant filed a Post-Trial Motion, requesting removal of the nonsuit and a new trial, which the trial court denied. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement.[4] The court issued a responsive Opinion.

Appellant raises the following issues on appeal:

1. Whether the trial court abused its discretion in granting PCIC a nonsuit where:

   a. The allegations in the Underlying Complaint were sufficiently broad that the allegations fell within the scope of the Homeowner's Policy and/or the Umbrella Policy, thereby establishing a duty on PCIC to defend the insured; and

   b. The court erred in relying on the **M'Naghten**[5] rule for criminal insanity when determining whether PCIC had a duty to defend the insured.

2. Whether the trial court abused its discretion in precluding Appellant from introducing evidence of Appellant's legal expenses.

---

[4] "Historically, Pennsylvania law has held that the entry of compulsory nonsuit is not the ruling that is immediately appealable; rather, the appeal lies from the trial court's denial of the motion to remove the compulsory nonsuit." **Murphy v. Int'l Druidic Soc'y**, 152 A.3d 286, 289-90 (Pa. Super. 2016) (citing, *inter alia*, **Kukich v. Serbian E. Orthodox Church of Pittsburgh**, 202 A.2d 77, 77 (Pa. 1964)). Here, the trial court denied Appellant's Post-Trial Motion seeking removal of the nonsuit. Thus, we have jurisdiction to consider Appellant's issues on the merits. **Contra Murphy**, **supra** at 292 (concluding we lacked jurisdiction where appellant failed to file motion seeking removal of nonsuit).

[5] **See Regina v. M'Naghten**, 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843).

*See* Appellant's Br. at 4 (reordered and edited for clarity).

Generally, the trial court will resolve a declaratory judgment action involving an insurance coverage dispute on summary judgment. *See, e.g.*, ***Donegal Mut. Ins. Co. v. Baumhammers***, 938 A.2d 286, 288 (Pa. 2007) (affirming in part summary judgment determination that allegations against tortfeasor's parents constituted an "occurrence" that triggered coverage); ***Aetna Cas. & Sur. Co. v. Roe***, 650 A.2d 94, 96 (Pa. Super. 1994) (affirming trial court's grant of summary judgment where third party claims did not trigger insurer's duty to defend insured). Here, the trial court denied the parties' Motions for Summary Judgment, finding disputed issues of material fact, and therefore, this matter proceeded to trial. This led to the unique procedural posture of this case.

Pennsylvania Rule of Civil Procedure 230.1 provides that "on oral motion of the defendant, [the court] may enter a nonsuit on any and all causes of action if, at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief." Pa.R.C.P. 230.1(a)(1). "On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with [the] appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in [the] appellant's favor." ***Scampone v. Highland Park Care Center, LLC***, 57 A.3d 582, 595-96 (Pa. 2012) (citation and quotation marks omitted). We will reverse the trial court "only if the trial court abused its discretion or made an error of law."

***Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59 (Pa. Super. 2016) (citation omitted).

Essentially, in her first issue, Appellant disputes PCIC's decision to deny Feinstein a defense in the underlying litigation. ***See*** Appellant's Br. at 13. According to Appellant, the allegations in the Underlying Complaint were sufficiently broad so that a claim potentially fell within the scope of PCIC's coverage. ***See*** Appellant's Br. at 19. Moreover, Appellant asserts, despite the allegations of intentional conduct, PCIC had a duty to appoint representation to Feinstein while it investigated her "mental status." ***Id.*** at 18, 26. Appellant offers no legal authority in support of this assertion, and we have found none. ***See id.***

The fundamental issue in this appeal involves the interpretation of an insurance contract, which presents a question of law. ***Erie Ins. Exch. v. Muff***, 851 A.2d 919, 925 (Pa. Super. 2004). Our standard of review is *de novo*, and our scope of review is plenary. ***Donegal Mut. Ins. Co.***, ***supra*** at 290.

"An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings[.]" ***Gene's Restaurant, Inc. v. Nationwide Ins. Co.***, 548 A.2d 246, 246 (Pa. 1988) (citation omitted). This duty is distinct from and broader than an insurer's duty to provide indemnification. ***Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.***, 2 A.3d 526, 540-41 (Pa. 2010). Provided the underlying allegations encompass an injury that is actually or potentially within the scope

of the policy, an insurer must defend its insured. *Id.* at 541. This duty to defend persists "until the claim is confined to a recovery that the policy does not cover." *Id.* at 542.

Initially, the insurer must consider the question of coverage. *Id.* at 541. While this may be a difficult question to answer in the early stages of a claim, "[i]nsurers are in the business of making this decision." *Id.* at 542. Recognizing that an insurer's decision to deny coverage is a perilous one, our Supreme Court has described the process as follows:

> In some circumstances, an insurance company may face a difficult decision as to whether a claim falls, or potentially falls, within the scope of the insurance policy. However, it is a decision the insurer must make. If it believes there is no possibility of coverage, then it should deny its insured a defense because the insurer will never be liable for any settlement or judgment. This would allow the insured to control its own defense without breaching its contractual obligation to be defended by the insurer. If, on the other hand, the insurer is uncertain about coverage, then it should provide a defense and seek declaratory judgment about coverage.

*Id.* (internal citation omitted).

In the context of a declaratory judgment action, the court resolves the question of coverage. *Id.* By comparing the allegations to the insurance policy provisions, we determine "whether, **if the allegations are sustained**, the insurer would be required to pay [a] resulting judgment[.]" *Gene's Restaurant, Inc.*, *supra* at 246 (emphasis added). "The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." *Am. and Foreign Ins. Co.*, *supra* at 541. We do not consider extrinsic

evidence.  *See **Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 896 (Pa. 2006).

In ***Kvaerner Metals***, the Supreme Court rejected this Court's reliance on extrinsic, expert reports that potentially brought a claim within the scope of insurance coverage and thus triggered an insurer's duty to defend. ***Kvaerner Metals***, ***supra*** at 896.  According to the Supreme Court, in looking beyond the allegations raised in the underlying complaint, we had "departed from . . . well-established precedent . . . requiring that an insurer's duty to defend and indemnify be determined solely from the language of the complaint against the insured."  ***Id.*** at 896 (citing in support ***Mut. Benefit Ins. Co. v. Haver***, 725 A.2d 743, 745 (Pa. 1999); ***Gen. Accident Ins. Co. of Am. v. Allen***, 692 A.2d 1089, 1095 (Pa. 1997); ***Wilson v. Md. Cas. Co.***, 105 A.2d 304, 307 (Pa. 1954)).

Here, when this matter proceeded to trial, the court afforded Appellant an opportunity to establish that Feinstein suffered from such diminished mental capacity that she was unable to act intentionally.  However, the allegations set forth in the Underlying Complaint do not aver or even suggest that Feinstein lacked the mental capacity for intentional conduct.  Thus, the court erred in permitting Appellant to introduce extrinsic evidence into the

record and further erred in considering this evidence in evaluating whether the Underlying Complaint triggered PCIC's duty to defend her.[6] *Id.*

PCIC provided liability coverage to Feinstein for bodily injury caused by an occurrence, which both policies defined as an accident. An accident is "an unexpected and undesirable event" or "something that occurs unexpectedly or unintentionally." *Kvaerner Metals*, *supra* at 898. The key term is unexpected, "which implies a degree of fortuity." *Donegal Mut. Ins. Co.*, *supra* at 292; *Kvaerner Metals*, *supra* at 898.

In the Underlying Complaint, Parkin described the assault by Feinstein as follows:

> Feinstein became irate and irrational and attacked [Parkin] from behind. During the attack, Feinstein choked and punched [Parkin] while calling [her] racial slurs. [Parkin] did not provoke Feinstein, nor did she engage in mutual fighting or attempt to physically subdue Feinstein.

Underlying Complaint at ¶¶ 8-10. Similarly, in support of her claim of IIED, Parkin alleged that "Feinstein attacked [her], grabbing her neck and punching her face, all while calling [Parkin] racial slurs and promising to 'kill her.'" *Id.* at ¶ 29.

Parkin's allegations set forth a purposeful attack. Feinstein's assault upon her was not an accident; rather, it was an intentional tort. Critically, if

---

[6] Nevertheless, we observe that, despite the opportunity afforded her by the trial court, Appellant presented **no** medical testimony to support her assertions. Rather, Appellant merely presented her own, uncorroborated opinions and observations.

- 11 -

her allegations were sustained, PCIC would **not** be required to pay a resulting judgment. *See Gene's Restaurant, Inc.*, *supra* at 246. Accordingly, the allegations did not trigger coverage under the policies, and PCIC owed no duty to defend Feinstein. *Id.* at 247; *see also State Farm Mut. Auto. Ins. Co. v. Martin*, 660 A.2d 66, 68 (Pa. Super. 1995) (quoting *Nationwide Mut. Ins. Co. v. Hassinger*, 473 A.2d 171, 173 (Pa. Super. 1984) ("[I]t is against the public policy of this Commonwealth to provide insurance coverage for intentional acts.").[7]

Appellant also challenges the trial court's reliance on the *M'Naghten* Rule as the standard against which any evidence of diminished mental capacity should be judged.[8] *See* Trial Court Op., 7/2/18, at 1-2 (unpaginated)

---

[7] Appellant has not distinguished between the several claims brought by Parkin. *See generally* Appellant's Br. She has presented no specific challenge to PCIC's denial of coverage for Parkin's claims of Breach of Contract or False Imprisonment. *See* Appellant's Br. at 13-27. Accordingly, we infer that Appellant concedes that no coverage is available for these claims. Nevertheless, we state clearly that no coverage is available. The Homeowner's Policy provides coverage for bodily injury and property damage, not contractual damages or personal injury. *See*, *supra*, n.2 (recognizing personal injury as separate category of coverage defined in Umbrella Policy). Further, we note that the Umbrella Policy excludes coverage for personal injury sustained directly or indirectly through employment by the insured. This exclusion is applicable.

[8] The *M'Naghten* Rule defines the legal insanity defense to criminal conduct. It has been codified as follows: "[T]he phrase "**legally insane**" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong." 18 Pa.C.S. § 315(b) (emphasis in original).

(citing **Germantown Ins. Co. v. Martin**, 595 A.2d 1172 (Pa. Super. 1991), and concluding Appellant failed to establish that Feinstein "did not know right from wrong"). However, in light of our legal determination that the allegations set forth in the Underlying Complaint do not constitute an occurrence and as it is inappropriate for this Court to consider extrinsic evidence, we do not reach the question whether, under relevant circumstances, the **M'Naghten** Rule is applicable.[9]

PCIC owed no duty to defend Feinstein in the underlying litigation. Therefore, Appellant's second issue, in which she asserts the trial court abused its discretion in precluding evidence of attorney's fees, is moot.

Order affirmed.

---

[9] In **Germantown Ins. Co.**, **supra** at 1176, this Court characterized the **M'Naghten** Rule as "applicable . . . in civil and criminal matters[,]" to the extent an insanity standard was relevant. It is inapposite for numerous reasons. In **Germantown Ins. Co.**, we examined an insurance policy exclusion, not whether an alleged assault constituted an occurrence, as we do here. **See id.** at 1175 ("In this case, we are concerned only with the excluded coverage portions of the policy, more specifically the stock phrase concerning damage which is 'expected or intended by the insured.'"). Further, our discussion of the **M'Naghten** Rule was *dicta*. **Id.** (holding (1) that the insured tortfeasor's conduct produced "expected or intended" damages subject to a policy's exclusionary provisions and (2) in the alternative, barring coverage as violative of public policy), **id.** at 1176 (thereafter suggesting **M'Naghten** Rule applicable but observing that "psychiatric testimony [is] . . . irrelevant to issue of coverage"); **see also id.** at 1176 (Beck, J., concurring) (recognizing **M'Naghten** Rule discussion as *dicta*). Our Supreme Court has never adopted the **M'Naghten** Rule in the context of an insurance coverage dispute, nor has this Court cited **Germantown Ins. Co.** favorably in this regard. **But see Robinson v. Allstate Prop. & Cas. Ins. Co.**, 306 F.Supp.3d 672, 682 (E.D.Pa. 2018) (predicting the Pennsylvania Supreme Court will adopt the reasoning in **Germantown Ins. Co.**).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/26/19</u>